[Tagged Opinion]



**ORDERED in the Southern District of Florida on February 28, 2013.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

| | |
|---|---|
| In re: | Chapter 15 |
| **BRITISH AMERICAN INSURANCE COMPANY LIMITED,** | **Case No. 09-31881-EPK**<br>**Case No. 09-35888-EPK**<br>**(Jointly Administered)** |
| Debtor in a Foreign Proceeding. | |

_____/

**BRITISH AMERICAN INSURANCE COMPANY LIMITED,**

    **Plaintiff,**

v.                                                    Adv. Proc. No. 11-03118-EPK

**ROBERT FULLERTON, BRIAN BRANKER, RAMCHAND RAMNARINE, LAWRENCE DUPREY, VISHNU RAMLOGAN, SHIVA RAMBERRAN, GREEN ISLAND HOLDINGS, LLC, and CHARLES PRATT,**

    **Defendants.**

_____/

### <u>MEMORANDUM OPINION ON DEFENDANTS' MOTION TO DISMISS</u>

**THIS MATTER** came before the Court upon *Lawrence Duprey's and Vishnu*

*Ramlogan's Motion to Dismiss Count I of the Adversary Complaint or, Alternatively, for Abstention* [ECF No. 174] (the "Motion to Dismiss") filed by Lawrence Duprey and Vishnu Ramlogan[1] (together, the "Defendants").  The Defendants argue that Count I of the Adversary Complaint should be dismissed for lack of subject matter jurisdiction or that, in the alternative, the Court should abstain from adjudicating Count I.

In Count I the plaintiff, British American Insurance Company Limited ("BAICO" or the "plaintiff"), seeks damages for breach of fiduciary duty against its former directors, including the Defendants.  The Defendants argue that the claim presented in Count I is a tort claim constituting intangible property located outside the United States and that this Court is without jurisdiction to entertain such a claim in light of the provisions of 11 U.S.C. § 1521(a)(5).  The Defendants argue that the Court also lacks subject matter jurisdiction as Mr. Brian Glasgow, the foreign representative of BAICO in the above-captioned nonmain chapter 15 case, lacks standing to pursue Count I because he represents only a branch of BAICO in Saint Vincent and the Grenadines and not the entire entity.  The Defendants argue that permitting Mr. Glasgow to bring Count I under United States bankruptcy jurisdiction would have unintended and unwelcome consequences.  In the alternative, the Defendants argue that the Court should abstain from adjudicating Count I[2] under the permissive abstention provisions of 28 U.S.C. § 1334(c)(1).

---

[1] Mr. Ramlogan also filed a motion to dismiss this action as against him, alleging lack of personal jurisdiction.  That motion is under consideration.

[2] In their Motion to Dismiss and brief, the Defendants sometimes request that the Court abstain from Count I and sometimes request that the Court abstain from the entire adversary proceeding.  The Defendants do not have standing to request that the Court abstain from adjudicating Counts II, III, or IV of the Complaint.  These other counts are independent causes of action against parties other than the Defendants.  While prosecution of such claims, particularly the claim in Count II for aiding and abetting the Defendants' alleged breach of fiduciary duty, would necessarily require the Court to consider facts also addressed in Count I, and the Defendants likely would be called to testify, there is no argument that the Defendants would be bound by an independent ruling on Counts II, III, or IV in this case.  The Court treats the Defendants' request for abstention as aimed solely at Count I, the only count where they are named defendants.

As set forth more fully below, *inter alia*, the Court rules that there is "related to" jurisdiction over Count I of the complaint under 28 U.S.C. § 1334(b), that 11 U.S.C. § 1521(a)(5) does not present a limitation on the Court's subject matter jurisdiction, that 11 U.S.C. § 1521(a)(5) limits the Court's *in rem* jurisdiction but such jurisdiction is not implicated in Count I, and that 28 U.S.C. § 1334(c)(1) does not permit the Court to abstain from hearing Count I on a permissive basis, and so the *Motion to Dismiss* will be denied.

**OVERVIEW OF CHAPTER 15**

This adversary proceeding is filed in connection with a pending case under chapter 15 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. While Congress enacted chapter 15 as part of the Bankruptcy Code, and the bankruptcy court is the obvious forum to address cross-border insolvency concerns, much of chapter 15 is divorced from the remainder of the Bankruptcy Code. To understand this case in the light under which it comes to the Court, it is useful to review the purposes of chapter 15 and the process for recognition of a foreign proceeding.

Chapter 15 is entitled "Ancillary and Other Cross-Border Cases." 11 U.S.C. § 1501 *et seq*. Enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, chapter 15 replaced section[3] 304 of the Bankruptcy Code. Section 1501(a) sets out the goals of chapter 15:

(a) The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of—

(1) cooperation between—

(A) courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and

---

[3] In this opinion, the word "section" refers to a section or sections of title 11 or title 28 of the United States Code, as the context provides.

(B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;

(2) greater legal certainty for trade and investment;

(3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;

(4) protection and maximization of the value of the debtor's assets; and

(5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501(a).

Chapter 15 represents a nearly verbatim enactment of the Model Law on Cross-Border Insolvency (the "Model Law") promulgated by the United Nations Commission on International Trade Law ("UNCITRAL") in 1997. 11 U.S.C. § 1501(a); *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 43 (Bankr. S.D.N.Y. 2008) ("The language of chapter 15 tracks the Model Law, with some modifications that are designed to conform the Model Law with existing United States law."). The Model Law has been enacted in the following countries: Australia (2008), British Virgin Islands, overseas territory of the United Kingdom of Great Britain and Northern Ireland (2003), Canada (2005), Colombia (2006), Eritrea (1998), Great Britain (2006), Greece (2010), Japan (2000), Mauritius (2009), Mexico (2000), Montenegro (2002), New Zealand (2006), Poland (2003), Republic of Korea (2006), Romania (2002), Serbia (2004), Slovenia (2007), South Africa (2000), Uganda (2011), and the United States of America (2005). UNCITRAL, Status: 1997 - Model Law on Cross-border Insolvency, http://www.uncitral.org/uncitral/en/uncitral_texts/insolvency/1997 Model_status.html (last visited Feb. 28, 2013).

International uniformity is a primary goal of the Model Law and thus of chapter 15. 11 U.S.C. §§ 1501(a), 1508.  UNCITRAL expressed the desire that the Model Law be enacted by adopting countries with as few changes as possible "in order to achieve a satisfactory degree of harmonization and certainty."  United Nations Commission on International Trade Law (UNCITRAL), Cross-Border Insolvency: Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency, ¶ 12, U.N. Doc. A/CN.9/442 (Dec. 19, 1997) [hereinafter "Guide to Enactment"].[4]  When implementing chapter 15, section 1508 requires the Court to "consider its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions."  11 U.S.C. § 1508.  The House Report contemplates courts looking to the Guide to Enactment and the Reports cited therein to aid the courts in achieving a uniform interpretation of chapter 15.  H.R. Rep. No. 109-31, pt. 1, at 109-10 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 172-73 (the "House Report").

Sections 1515 through 1518, inclusive, set out a rigid procedure for recognition of a proceeding pending in a foreign country.  *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 132 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008).  This recognition procedure is completely new to the Bankruptcy Code.  It reflects a policy determination by UNCITRAL and Congress that this Court should not assist a representative of a foreign action unless the debtor has a sufficient presence in the country in which the foreign action is taking place.  *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333-34 (S.D.N.Y. 2008) (*citing* House Report at 110; § 1509(b)(3)).

---

[4] The UNCITRAL Model Law on Cross-Border Insolvency with Guide to Enactment is available at http://www.uncitral.org/pdf/english/texts/insolven/insolvency-e.pdf.

> If the debtor does not have its center of main interests or at least an establishment in the country of the foreign proceedings, the bankruptcy court should not grant recognition and is not authorized to use its power to effectuate the purposes of the foreign proceeding. Implicitly, in such an instance the debtor's liquidation or reorganization should be taking place in a country other than the one in which the foreign proceeding was filed to be entitled to assistance from the United States.

*Id.* at 334 (internal citations omitted).

The general principles of comity that governed acknowledgement of cross-border matters under former section 304 no longer apply to recognition under chapter 15. *Lavie v. Ran*, 406 B.R. 277, 282 (S.D. Tex. 2009), *aff'd*, 607 F.3d 1017 (5th Cir. 2010).

> Approaches based purely on the doctrine of comity or on *exequatur* do not provide the same degree of predictability and reliability as can be provided by specific legislation, such as the one contained in the Model Law, on judicial cooperation, recognition of foreign insolvency proceedings and access for foreign representatives to courts.

Guide to Enactment ¶ 16. Except with regard to certain relief that may be accorded after recognition of a foreign proceeding, it is not appropriate to rely on case law under former section 304. *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. at 132; House Report at 109-10, 113, 119.

A person seeking recognition of a proceeding in a foreign country must file a petition for recognition under sections 1504, 1509, and 1515. Upon filing of a petition for recognition, the court will set a hearing on notice as required by Fed. R. Bankr. P. 2002(q).

The Court must review the petition for recognition in light of the requirements of chapter 15. *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. at 126-27. If a petition for recognition is unopposed, the Court may rely on certain presumptions provided by section 1516. Even so, the Court has a duty to review each petition to determine whether it satisfies all requisites for recognition. *Id.* at 129-30.

Section 1517 sets out the substantive test for recognition of a foreign proceeding. It provides as follows:

> (a) Subject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if—
>
>> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>>
>> (2) the foreign representative applying for recognition is a person or body; and
>>
>> (3) the petition meets the requirements of section 1515.
>
> (b) Such foreign proceeding shall be recognized—
>
>> (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests; or
>>
>> (2) as a foreign nonmain proceeding if the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending.
>
> (c) A petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time. Entry of an order recognizing a foreign proceeding constitutes recognition under this chapter.
>
> (d) The provisions of this subchapter do not prevent modification or termination of recognition if it is shown that the grounds for granting it were fully or partially lacking or have ceased to exist, but in considering such action the court shall give due weight to possible prejudice to parties that have relied upon the order granting recognition. A case under this chapter may be closed in the manner prescribed under section 350.

11 U.S.C. § 1517.

In ruling on a petition for recognition under section 1517, the Court must address the following:

1. Would the proposed recognition be "manifestly contrary to the public policy of the United States" as contemplated under section 1506?

2. Is the subject foreign action a "foreign proceeding" as defined in 11 U.S.C. §

101(23)?

3.   Is the foreign representative who filed the petition for recognition a person or body?

4.   Does the petition meet the formal requirements of section 1515?

5.   Is the foreign proceeding pending in the country where the debtor has the center of its main interest and thus a foreign main proceeding?

6.   Does the debtor have an establishment in the foreign country where the proceeding is pending, thus making the foreign proceeding a foreign nonmain proceeding?

Section 1517(a) and the definitions of "foreign main proceeding" and "foreign nonmain proceeding," found in section 1502, each incorporate the defined term "foreign proceeding."  "The term 'foreign proceeding' means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation."  11 U.S.C. § 101(23).  The term "'foreign main proceeding' means a foreign proceeding pending in the country where the debtor has the center of its main interests."  11 U.S.C. § 1502(4).  The term "'foreign nonmain proceeding' means a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." 11 U.S.C. § 1502(5).  "'[E]stablishment' means any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2).[5]

---

[5] This Court has previously published a decision in the above-captioned chapter 15 case addressing the determination of a debtor's center of main interest and/or establishment for purposes of ascertaining whether a foreign proceeding is a main or nonmain proceeding, or neither of these.  *In re British Am. Ins. Co.*, 425 B.R. 884 (Bankr. S.D. Fla. 2010).

If recognized as a foreign main proceeding, certain provisions of the Bankruptcy Code automatically apply with respect to the debtor in a foreign proceeding, the debtor's property located within the territorial jurisdiction of the United States, and the debtor's foreign representative. 11 U.S.C. § 1520.  For example, upon recognition of a foreign main proceeding actions against the debtor and its property are stayed, transfers outside the ordinary course of business must be approved by the court recognizing the foreign proceeding, and parties holding assets of the debtor may be subject to turnover orders, among other things. *Id*.

The foreign representative of a main or nonmain proceeding may also request relief under section 1521.  To some extent, relief available under section 1521 is parallel to that provided for main proceedings under section 1520.  For example, under section 1521(a)(1) the court may stay actions concerning the debtor's assets and may restrict the transfer of the debtor's assets.  The foreign representative of a foreign nonmain proceeding can thereby obtain nearly identical relief to that automatically accorded to a main proceeding under section 1520.  Section 1521 includes other potential relief often requested in a chapter 15 case, including an order specifically providing that the foreign representative is entrusted with the administration and/or realization of the debtor's assets within the territorial jurisdiction of the United States.  11 U.S.C. § 1521(a)(5).

## BACKGROUND

The plaintiff is an insurance company chartered under the laws of The Bahamas.  It has or had branch operations throughout the Caribbean, including Saint Vincent and the Grenadines ("SVG").

By order entered August 4, 2009 (the "SVG Order of Appointment"), the Eastern Caribbean Supreme Court in the High Court of Justice Saint Vincent and the Grenadines

(the "SVG Court") appointed Mr. Glasgow as Judicial Manager for BAICO under Section 52

of the Insurance Act, No. 45 of 2003 of the Laws of Saint Vincent and the Grenadines.  *In re*

*British Am. Ins. Co.*, 425 B.R. 884, 893 (Bankr. S.D. Fla. 2010).[6]  The SVG Order of

Appointment places the affairs, business, and property of BAICO in SVG under Judicial

Management.  The SVG Order of Appointment stays all actions, proceedings, and claims

against BAICO.  It empowers Mr. Glasgow, as Judicial Manager, to: (a) ascertain the assets

of BAICO and take all steps necessary to obtain possession of such assets; (b) incur and pay

for all reasonable expenses and disbursements in connection with the running,

administration, and management of BAICO's records, affairs, and offices; (c) if appropriate,

retain or employ professionals or others to assist in running the affairs and business of

BAICO and for the purposes of ascertaining and quantifying the assets, records, and

liabilities of BAICO, such employment being either in the jurisdiction of SVG or any other

jurisdiction where BAICO conducted business or entered into contracts with third parties;

(d) render invoices for their remuneration at their usual and customary rates; (e) take all

actions necessary to see, review, secure, and take possession of any books, papers, writings,

documents, and records relating to BAICO that are located in the offices of its auditors or

any other person and to bring the same under his control; (f) take all actions necessary to

see, review, secure, and take possession of the claims and financial records of BAICO

located in the offices of BAICO or any company affiliated with BAICO or any other person

and to bring the same under his control; (g) open, operate, and maintain bank accounts in

the name of the Judicial Manager or BAICO as may be necessary; (h) conduct such

investigations and obtain such information as is necessary to locate, protect, secure, take

---

[6] The Court recounts here certain background information from prior decisions in the above-captioned chapter 15 case.  While such facts are not necessary to the Court's decision here, they provide useful context.

10

possession of, collect, and get in the assets of BAICO and determine liabilities, or to enable the Judicial Management to proceed in a speedy and efficient manner; (i) do all such things as may be necessary or expedient for the protection of BAICO's property or assets; (j) enter into commutations, settlements, and compromises with any creditors and any debtors of BAICO; (k) employ and dismiss any employees of BAICO; (l) discharge rent, salaries of any employees of BAICO, and other current expenses of BAICO; (m) grant or accept a surrender of a lease or tenancy of any of the property of BAICO and take a lease or tenancy of any property required or convenient for the business of BAICO; (n) terminate, complete, or perfect as advised any contracts or transactions relating to the business of BAICO; (o) effect insurance in connection with the management and maintenance of the business, property, and assets of BAICO; (p) do all acts and execute in the name and on behalf of BAICO all deeds receipts or other documents; (q) rank and claim in the bankruptcy, liquidation, or insolvency of any person indebted to BAICO and receive dividends, and accede to trust deeds for the creditors of any such person; (r) manage, adjust, and pay claims against BAICO and/or its policyholders and enter into agreements with third parties for the provision of claims handling and related services to BAICO in relation to BAICO's business; (s) carry on all or any portion of the business of BAICO so far as may be necessary to process claims against BAICO, to effect reinsurance recoveries, and to pay any class of creditor and any claims, settlements, and expenses in full; (t) retain and employ barristers, attorneys, solicitors, or other lawyers in jurisdictions as the Judicial Manager sees fit for the purpose of advising and assisting the Judicial Manager in the execution of his powers or in any legal or arbitration proceedings; (u) consider any legal or arbitration proceedings wherever situate in which BAICO either is a party or of which BAICO presently has conduct or which BAICO would, but for the SVG proceeding, take conduct and pay all fees

11

and expenses, give all instructions in connection therewith, and take such action as may be thought necessary to continue to prosecute or to defend such proceedings or to apply for a stay of such proceedings; (v) consider and if thought advisable commence such actions as may be necessary to protect, recover, or obtain assets and/or monies belonging or due to BAICO and commence all other proceedings as may be necessary to have his appointment recognized and protect the assets of BAICO; (w) borrow such money from time to time as he may consider necessary or desirable for the proper operation and functioning of BAICO's business including any monies borrowed or to be borrowed for expenses incurred by the Judicial Manager, subject to the approval of the Minister of Finance, while operating by virtue of his appointment under the SVG Order of Appointment; and (x) do all such things reasonably and properly incidental to the exercise of the foregoing powers. *Id*. at 893-94. It appears that Mr. Glasgow has all necessary authority under the SVG Order of Appointment to pursue Count I in this adversary proceeding. The Court need not look to the SVG Order of Appointment, however, as the Defendants do not argue that Mr. Glasgow lacks such authority, only that he should not be permitted to exercise it here due to the nonmain nature of the SVG proceeding, among other things.

On November 23, 2009, Mr. Glasgow, as duly appointed Judicial Manager for BAICO, filed a petition with this Court pursuant to sections 1515 and 1517, seeking recognition of the proceeding in the SVG Court as a foreign nonmain proceeding. Green Island Holdings, LLC ("GIH"), another defendant in this adversary proceeding, opposed such recognition. The Court held a multi-day evidentiary hearing and, on March 22, 2010, issued its *Opinion on Recognition of Foreign Proceedings* [09-31881-EPK, ECF No. 65; 09-35888-EPK, ECF No. 6] recognizing the proceeding in SVG as a foreign nonmain

proceeding.  *Id.*[7]

Acting through Mr. Glasgow, the plaintiff filed the complaint commencing this adversary proceeding on December 22, 2011.  In this adversary proceeding, the plaintiff seeks damages from several of its former directors, including the Defendants, for alleged breaches of fiduciary duty when such directors caused the plaintiff to enter into an unsuccessful real estate transaction with defendant GIH.  The plaintiff also seeks damages against other parties for allegedly aiding and abetting such breaches of fiduciary duty.  The plaintiff seeks an order rescinding the transaction with GIH.  And the plaintiff seeks to avoid as fraudulent conveyances certain transfers to and obligations incurred in favor of GIH in the subject transaction.

The plaintiff's core allegation is that its former directors, including the Defendants, "drove [the plaintiff] into highly speculative and cash-intensive real estate investments in the State of Florida which, not only were against the best interests of [the plaintiff], were actually fatal to [its] financial existence."  The plaintiff alleges that the former directors' actions rendered the plaintiff insolvent and left it with unreasonably small capital.

After alleging that the Defendants and other director defendants caused the plaintiff to undertake several inappropriate investments, the plaintiff focuses on what is referred to as the Green Island transaction.  The history of the transaction involves multiple assignments of the rights of both the seller and the purchaser through various entities, a level of complication that the Court need not review here.  In the simplest terms, the Green

---

[7] In this published ruling, the Court also denied recognition of a liquidation proceeding for BAICO pending in The Bahamas.  Although it appeared that all foreign proceedings for BAICO in the Caribbean were being coordinated through the proceeding pending in The Bahamas, the Court determined that The Bahamas was not BAICO's center of main interest, nor did BAICO have an establishment in The Bahamas, within the meaning of those terms in chapter 15, and thus The Bahamas proceeding was not recognized.

Island transaction involved the acquisition by the plaintiff, through its wholly-owned subsidiary British American Isle of Venice (BVI) Limited ("Isle of Venice"),[8] of an interest in approximately 6,000 acres of substantially undeveloped real estate in Florida. The plaintiff caused Isle of Venice to purchase from GIH a 100% membership interest in Green Island Ventures, LLC ("Ventures"). Ventures was the owner of the real estate, which it acquired on the same day that Isle of Venice acquired ownership of Ventures. After closing of the Green Island transaction, Ventures owned the real estate, Isle of Venice owned Ventures, and the plaintiff continued to own Isle of Venice. Thus, the plaintiff became the indirect owner of the real estate. In connection with the Green Island transaction, it is alleged that the plaintiff funded nearly $82 million in cash and obligated itself on a $159 million mortgage to a prior owner of the real estate and on a purchase money note exceeding $56 million in favor of GIH.

**MOTION TO DISMISS AND LEGAL STANDARD**

The Defendants move to dismiss Count I under Fed. R. Civ. P. 12(b)(1), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012. An attack on subject matter jurisdiction pursuant to Rule 12(b)(1) may be made on facial or factual grounds. *Carmichael v. Kellogg, Brown & Root Serv., Inc.,* 572 F.3d 1271, 1279 (11th Cir. 2009). Facial challenges are based solely on the allegations in the complaint. *Id.* Factual challenges may require the court to consider extrinsic evidence such as deposition testimony and affidavits. *Id.* Here, the Defendants challenge subject matter jurisdiction on factual grounds. Unlike the analysis used to decide a facial challenge to subject matter jurisdiction or a Rule 12(b)(6) challenge for failure to state a claim upon which relief can be

---

[8] BAICO owns a number of subsidiaries. Isle of Venice is a company incorporated under the laws of The British Virgin Islands and is a wholly-owned subsidiary of BAICO. Isle of Venice is also a chapter 15 debtor before this Court.

granted, when deciding a Rule 12(b)(1) motion made on factual grounds the Court is not required to take the allegations in the complaint as true; the Court may weigh the facts. *Id.* In this case, the Court's conclusion would be the same under either standard of review.

### FEDERAL BANKRUPTCY JURISDICTION

As the Supreme Court observed, "Jurisdiction . . . is a word of many, too many, meanings." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006) (*quoting Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 90 (1998) (internal quotations omitted)). The case law addressed in the briefs here uses the term "jurisdiction" in various inconsistent ways, to refer to subject matter jurisdiction, to refer to limitations on the ability to pursue certain claims which limitations have nothing to do with subject matter jurisdiction, and to refer to the power of a bankruptcy court to enter a final order, a concern only tangentially related to jurisdiction. To shed some light on this morass of "jurisdictional" discussion, it is useful to review the Constitutional and statutory bases for federal bankruptcy jurisdiction.

Pursuant to Article I, Section 8 of the United States Constitution, Congress enacted 28 U.S.C. § 1334. Section 1334 is the sole source of subject matter jurisdiction in bankruptcy. Subsection (a) of that provision grants to the district courts "original and exclusive jurisdiction of all cases under title 11," and subsection (b) grants to the district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §§ 1334(a) and (b).[9] All

---

[9] A proceeding "arising under" title 11 is one based in a provision of the Bankruptcy Code itself. *Cont'l Nat'l Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1345 (11th Cir. 1999) (citation omitted). For example, an action to avoid and recover a preferential transfer under sections 547 and 550 is one "arising under" title 11. A proceeding "arising in" a case under title 11 is a proceeding that, even if not specifically provided for in the Bankruptcy Code, can take place only in the context of a case under title 11. This includes various matters affecting administration of a bankruptcy estate. *Id.* (citations omitted). Proceedings arising under or arising in a title 11 case are to be contrasted with "related to" matters. A "related to" matter is one which does not find its source in

15

bankruptcy jurisdiction is initially lodged in the district courts.

Under 28 U.S.C. § 157(a), each district court may refer to the bankruptcy court "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." Thus, the district court may refer to the bankruptcy court any and all matters covered by 28 U.S.C. § 1334. This has been accomplished in every district in the United States by standing orders of reference. On March 27, 2012, the district court for the Southern District of Florida issued a revised *Order of Reference*, Administrative Order 2012-25 (the "Standing Order"). The Standing Order refers to the bankruptcy court in this district any and all cases and proceedings covered by federal bankruptcy jurisdiction. The district court may for cause shown withdraw, in whole or in part, any case or proceeding referred to the bankruptcy court under the Standing Order. 28 U.S.C. § 157(d).

Not all matters referred to the bankruptcy court are subject to entry of final orders or judgments in the bankruptcy court. Congress decreed that "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11" referred to the bankruptcy court are subject to entry of final orders and judgments in the bankruptcy court. 28 U.S.C. § 157(b)(1). Thus, once referred to the bankruptcy court, the bankruptcy court has the statutory power to enter final orders and judgments in cases under title 11 and in "core" matters "arising under" or "arising in" cases under title 11. With regard to non-core proceedings, the bankruptcy court may hear such proceedings but, absent consent

---

the Bankruptcy Code, and could be pursued outside a title 11 case, but which nonetheless bears a connection with the title 11 case sufficient to bring it within federal bankruptcy jurisdiction. *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990) ("An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.") (citation omitted). The concept of "related to" bankruptcy jurisdiction is addressed more fully below.

of the parties, must then submit proposed findings of fact and conclusions of law to the district court.  28 U.S.C. § 157(c).[10]  If the parties consent in a non-core proceeding, the bankruptcy court may enter a final order or judgment.  28 U.S.C. § 157(c)(2).

Thus, absent consent of the parties, the statutory power of the bankruptcy court to enter final orders and judgments depends on whether the matter before the court is core or non-core.  28 U.S.C. § 157(b)(2) sets out a non-exclusive list of matters defined as core proceedings.  In this provision, Congress exhibited its intent to provide to the bankruptcy court the broadest power to enter final orders and judgments that is consistent with the requirements of the Constitution. *Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553, 565 (9th Cir. 2012).

The bankruptcy court is not a tribunal provided for in Article III of the Constitution.  As such, there are limits on the power of Congress to direct what matters may be subject to final orders and judgments in the bankruptcy court. *Stern v. Marshall*, 131 S. Ct. 2594, 2608-20 (2011).  The proceedings described as core in 28 U.S.C. § 157(b) could include matters in which the bankruptcy court may not enter final orders or judgments consistent with the limits of Article III, absent consent of the parties. *Id*.  Thus, to determine whether a particular proceeding may be subject to entry of a final order or judgment in the bankruptcy court, it is necessary to determine whether the proceeding is a core proceeding

---

[10] It does not appear that the district court may refer to the bankruptcy court a core matter that is subject to entry of final orders or judgments in the bankruptcy court consistent with Article III of the Constitution, but nevertheless direct that the bankruptcy court issue proposed findings of fact and conclusions of law.  28 U.S.C. § 157(c)(1) provides for the bankruptcy court to issue proposed findings and conclusions only in non-core matters.  This provision may reasonably be extended to matters labeled as core in the statute but that are not subject to final orders or judgments in the bankruptcy court consistent with the requirements of Article III (see below).  However, 28 U.S.C. § 157(b)(1) provides that the bankruptcy court is to enter final orders and judgments in core matters referred to it (to the extent permitted by the Constitution), and section 157(c)(1) explicitly does not apply in such circumstances.  And so there is no statutory basis for the district court to direct the bankruptcy court to file proposed findings of fact and conclusions of law in truly core matters.  As no component of the present adversary proceeding is core, this issue is not presented here.

within the meaning of section 157(b), and also whether entry of such final order or judgment would exceed the limits imposed by Article III of the Constitution. *Id.*

Orders and judgments of the bankruptcy court entered in core matters and in non-core matters with the consent of the parties are subject to appeal to the district court under 28 U.S.C. § 158. Proposed findings of fact and conclusions of law submitted by the bankruptcy court, in non-core matters and in matters where Article III requires final orders to be entered by the district court, are subject to *de novo* review by the district court. 28 U.S.C. § 157(c)(1).[11] These are submitted to the district court pursuant to Fed. R. Bankr. P. 9033 and are subject to objections of the parties under that rule. The primary difference between a final order or judgment of the bankruptcy court and proposed findings of fact and conclusions of law is that the former has immediate legal impact but the latter does not. Absent entry of a stay pending appeal or similar relief, a final order or judgment of the bankruptcy court, whether entered in a core matter or in a non-core matter based on consent of the parties, is subject to execution or other enforcement without input from any other court. On the other hand, proposed findings of fact and conclusions of law issued by the bankruptcy court become enforceable if and only if, and only to the extent that, the district court enters an order approving or adopting them.

After the Supreme Court issued its opinion in *Stern v. Marshall*, some courts expressed concern as to how the bankruptcy court should address a proceeding that is statutorily defined as core but that involves a matter in which the bankruptcy court may not enter a final order, absent consent of the parties, as such order would exceed the bankruptcy court's constitutional power. 28 U.S.C. § 157(c)(1) and the related Fed. R.

---

[11] *De novo* review applies only to "those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1). If no specific objections are timely lodged, the bankruptcy court's proposed findings and conclusions may be adopted by the district court without further review.

Bankr. P. 9033 deal only with non-core matters, not matters specifically defined by Congress as core. And so the question arose whether the bankruptcy court was powerless to issue proposed findings of fact and conclusions of law in proceedings that while labeled core are nonetheless beyond the ability of the bankruptcy court to enter final orders. The better reasoned opinions reach the conclusion that the bankruptcy court may submit proposed findings of fact and conclusions of law in such cases. *E.g., In re Bellingham Ins. Agency, Inc.*, 702 F.3d at 565-66.[12]

The parties to a proceeding before the bankruptcy court that is non-core or that is core but nevertheless not subject to final order in the bankruptcy court, may consent to the bankruptcy court entering a final order or judgment. 28 U.S.C. § 157(c)(2). A party may consent to entry of a final order or judgment in the bankruptcy court by failing to object in a timely manner. *In re Bellingham Ins. Agency, Inc.*, 702 F.3d at 566-70.

Similarly, if a party to a proceeding before the bankruptcy court has a right to trial by jury under applicable law, the bankruptcy court may conduct a jury trial only with the consent of all parties. 28 U.S.C. § 157(e).[13]

---

[12] The district court's Standing Order reflects this view. It provides, in pertinent part:
> If a bankruptcy judge or district judge determines that entry of a final order or judgment by a bankruptcy judge would not be consistent with Article III of the United States Constitution in a particular proceeding referred under this order and determined to be a core matter, the bankruptcy judge shall, unless otherwise ordered by the district court, hear the proceeding and submit proposed findings of fact and conclusions of law to the district court made in compliance with Fed. R. Civ. P. 52(a)(1) in the form of findings of fact and conclusions of law stated on the record or in an opinion or memorandum of decision.

[13] Section 157(e) requires the "express consent" of all parties to the bankruptcy court conducting a jury trial. This is in contrast with section 157(c)(2), addressing non-core matters, which requires only "consent." As noted above, the parties may consent to the bankruptcy court entering final orders in non-core matters by failing to object in a timely manner. It is unclear whether the same analysis applies in the context of consent to a jury trial before the bankruptcy court under section 157(e). To avoid questions on this issue, this Court typically requires that each party expressly consent in writing or on the record if they wish this Court to preside over a jury trial. In any case, jury trials before the bankruptcy court are exceedingly rare in this district and elsewhere.

19

Whether a particular proceeding is core or non-core—whether the bankruptcy court may enter a final order or judgment therein—has no impact on whether there is federal bankruptcy jurisdiction over the proceeding.  The question of whether there is subject matter jurisdiction over an action pursued in connection with a title 11 case, and the question of which court may enter a binding order, are separate inquiries.  The bankruptcy court may have subject matter jurisdiction over a proceeding under 28 U.S.C. § 1334, yet not have the statutory or constitutional power to enter a final order or judgment.  In such a case, the district court may enter the binding order or judgment.

### NON-CORE DETERMINATION; WITHDRAWAL OF THE REFERENCE

This Court previously determined that all counts of the Complaint are non-core proceedings. [ECF Nos. 53, 54, 60, 77]  The District Court granted a motion to withdraw the reference of this adversary proceeding for purposes of trial and entry of any final orders or judgments. [ECF No. 245]  The question presented here is not whether this Court will enter final judgment, as it will not.  The question is whether there is subject matter jurisdiction over Count I of the Complaint under federal bankruptcy jurisdiction.

### JURISDICTION OVER COUNT I AS A "RELATED TO" MATTER

"A case under [chapter 15] is commenced by the filing of a petition for recognition of a foreign proceeding under section 1515." 11 U.S.C. § 1504; *see also* 11 U.S.C. § 1509(a).  The Court has jurisdiction over the above-captioned chapter 15 case as it is a case "under title 11" within the meaning of 28 U.S.C. § 1334(a).[14]

---

[14] The district court in *In re Fairfield Sentry Ltd.*, a decision discussed in more detail below, failed to recognize that a chapter 15 case is a case under title 11. *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 690 (S.D.N.Y. 2011) ("there is no title 11 proceeding ongoing here.").  The Second Circuit previously held that a proceeding under section 304, the predecessor to chapter 15, was a "case" within the meaning of that term in section 1334(b).  *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 578-79 (2d Cir. 2011).  There is less ambiguity that a chapter 15 case is such.

The Court previously determined that no component of this adversary proceeding is a matter arising under title 11 or a matter arising in a case under title 11 within the meaning of 28 U.S.C. § 1334(b).  The question here is whether Count I presents a related to matter under section 1334(b).

The Defendants argue that related to jurisdiction does not extend to adversary proceedings, such as this, brought by a foreign representative to pursue claims not specifically set out in the Bankruptcy Code.  This argument finds its source in case law, developed in the context of title 11 cases under chapters 7, 9, 11, 12 and 13, defining the extent of related to jurisdiction.

The Eleventh Circuit adopted the *Pacor* test enunciated by the Third Circuit to determine whether a civil proceeding is sufficiently related to a bankruptcy case to confer federal jurisdiction under section 1334(b):

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990) (*quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).  The *Pacor* test focuses on whether the proceeding in question may have an effect on the bankruptcy estate being administered by the federal court where the bankruptcy petition was filed.

The filing of a petition under any chapter of title 11 other than chapter 15 establishes a bankruptcy estate comprising essentially all property interests of the debtor. 11 U.S.C. §§ 541(a) and 902(1).  In such cases, the *in rem* component of federal bankruptcy

jurisdiction extends to all such property wherever located, whether within or outside the United States. 28 U.S.C. § 1334(e). This is because in a plenary chapter 7, 11, 12 or 13 case, and to some extent in a chapter 9 municipal case, a primary purpose of the petition is to corral the debtor's assets for the benefit of creditors and other parties in interest. In such cases, the court hearing the case serves as the central clearing house for addressing the interests of creditors.

This is in contrast with the role of United States courts in chapter 15 matters. In a chapter 15 case, the United States court acts only in an ancillary role. The goal of the United States court is to assist the objectives of the foreign proceeding consistent with the Model Law. 11 U.S.C. § 1501(a). This concept permeates the Model Law and chapter 15. In light of the United States court's ancillary role under chapter 15, there is no estate created here in a chapter 15 case. Section 541(a), establishing the estate under all chapters other than chapter 9, does not apply. *See* 11 U.S.C. § 103 (applicability of Bankruptcy Code provisions under the various chapters). Chapter 15 does not contain a definition of the term "estate." *See* 11 U.S.C. § 1502 (definitions of terms used in chapter 15).

The Defendants argue that the lack of a United States bankruptcy estate in this chapter 15 case means that the Court lacks subject matter jurisdiction under 11 U.S.C. § 1334(b). Looking to the *Pacor* test, which defines related to jurisdiction in reference to a proceeding's potential effect on administration of the estate, and noting that there is no estate in chapter 15, the Defendants argue that this adversary proceeding falls entirely outside federal bankruptcy jurisdiction. This is tantamount to arguing that this Court has subject matter jurisdiction only over the chapter 15 case and those proceedings specifically addressed in chapter 15, that related to jurisdiction does not exist in chapter 15.

22

Yet there is nothing in section 1334(b) limiting related to jurisdiction to cases under chapters 7, 9, 11, 12, and 13.  By its own terms section 1334(b) confers subject matter jurisdiction over any proceeding "related to a case under title 11."  A chapter 15 case is a case under title 11.  Congress exhibited no desire to remove proceedings related to chapter 15 cases from the ambit of federal bankruptcy jurisdiction.  To rely on case law developed entirely outside the chapter 15 context is misguided.

Without the anchor of a United States bankruptcy estate, the Court must look elsewhere to determine the extent of subject matter jurisdiction over related to matters in chapter 15.  The *Pacor* test itself, as adopted by the Eleventh Circuit in *Lemco Gypsum*, provides useful guidance.  "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re Lemco Gypsum, Inc.*, 910 F.2d at 788 (*quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).  The first component of this analysis, whether the outcome of the action "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)," is independent of the concept of a bankruptcy estate.  It looks to the impact on the debtor.  The second component of this analysis, whether the proceeding "in any way impacts upon the handling and administration of the bankrupt estate," looks to how the action fits into the overall insolvency proceeding.  After recognition of a foreign main or nonmain proceeding under chapter 15, this Court plays an important role in assisting the foreign court in meeting its objectives.  This role is clearly spelled out in section 1501 and is reflected in the entirety of chapter 15.  In considering whether there is related to jurisdiction under section 1334(b) with regard to a proceeding connected to a chapter 15 case, it is appropriate to substitute the chapter 15 case itself for the concept of the estate.

23

The inquiry becomes – does the action in any way impact upon the handling and administration of the chapter 15 case?

There is no question that Count I of the present adversary proceeding (and in fact this entire adversary proceeding) falls within related to jurisdiction under section 1334(b). The outcome of this action will liquidate significant claims of the debtor.  It could augment the recoveries of creditors of the debtor.   The action extends the reach of the SVG proceeding, facilitating the liquidation and collection of claims held by the plaintiff, consistent with the overarching goal of comity embedded in chapter 15 and the Model Law. If successful, the plaintiff may then pursue collection here in the United States and the resulting assets would be subject to administration under chapter 15.  Prosecution of Count I may impact both the plaintiff and the administration of the chapter 15 case, and thus satisfies both prongs of the *Pacor* test as applicable in chapter 15.

The Court may also define the extent of related to jurisdiction in chapter 15 cases by the potential effect of the action on the estate administered in the foreign proceeding.  This approach is found in the Second Circuit's pre-chapter 15 decision, *Parmalat Capital Finance Ltd. v. Bank of America Corp.*, 639 F.3d 572 (2d Cir. 2011).  In *Parmalat*, the court considered the extent of related to jurisdiction in the context of a proceeding under section 304, the predecessor to chapter 15.  The court determined that the location of the debtor's estate made no difference in the analysis under section 1334(b).[15]  Rather than focus on the impact on the ancillary case in the United States, as the Court does above, the Second Circuit looked to the impact on the proceeding pending in the foreign country.   To paraphrase the court, so long as the estate at issue in a chapter 15 case, wherever located,

---

[15] "In the context of § 1334(b), there is no need to distinguish between estates administered principally in foreign forums and those administered principally in domestic forums."  *Parmalat Capital Fin. Ltd.*, 639 F.3d at 579.

may conceivably be affected by the action in question, that action is related to the chapter 15 case. *See id.* at 579. The analysis is the same as if the foreign proceeding was instead a plenary United States case under chapter 7 or chapter 11. It is obvious that Count I (and in fact the entirety of the present adversary proceeding) also satisfies this alternative test.

### SECTION 1521 DOES NOT IMPACT SUBJECT MATTER JURISDICTION

Having determined that Count I presents a matter related to a case under title 11, and thus subject to jurisdiction here under section 1334(b), the Court must address the Defendants' argument that section 1521 presents a limitation on this subject matter jurisdiction.

Section 1521(a)(5) provides:

> Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including . . . (5) entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court.

11 U.S.C. § 1521(a)(5). This provision empowers the Court to entrust a foreign representative with the ability to administer and/or realize a foreign debtor's assets in the United States.

The Defendants focus on the phrase "within the territorial jurisdiction of the United States." This phrase is defined to include "intangible property deemed under applicable nonbankruptcy law to be located within that territory." 11 U.S.C. § 1502(8). The Defendants argue that: the claim of the plaintiff presented in Count I is an intangible asset located solely at the place of incorporation of the plaintiff in The Bahamas; pursuit of Count I is "realization" on such intangible asset within the meaning of that term in section

1521(a)(5); and, because the claim presented in Count I is not located within the territorial jurisdiction of the United States, the Court is without the power to authorize the plaintiff to pursue Count I under section 1521(a)(5). In short, the Defendants argue that section 1521(a)(5) is a limitation on the subject matter jurisdiction for bankruptcy matters granted in section 1334(b).

This argument follows a colloquial reading of section 1521(a)(5) without taking into account the text of section 1521 itself, the other provisions of chapter 15, and the relevant provisions of section 1334. Read in context, it is clear that section 1521 provides no limitation on subject matter jurisdiction in chapter 15 cases.

Section 1521 applies only after recognition of a foreign proceeding. A foreign representative seeks recognition in order to obtain some relief not otherwise available under United States law. It is not necessary that the debtor have any assets in the United States for there to be a chapter 15 case. Sometimes the relief sought by the foreign representative is limited to the ability to conduct discovery under section 1521(a)(4).[16] Or the foreign representative may seek a stay of litigation against the debtor under section 1521(a)(1), to the extent not already stayed under sections 1520(a)(1) and 362. But where the debtor has assets in the United States or may later acquire the right to assets in the United States, such as in executing on a judgment, the foreign representative must seek an order under section 1521(a)(5) to obtain the right to administer and/or realize on such assets, and must seek an order under section 1521(b) to address the distribution of such assets. In this chapter 15 case, the Court previously granted both forms of relief to the foreign representative.

---

[16] After recognition, broad based inquiry into the debtor's assets and affairs is available under Fed. R. Bankr. P. 2004 without the need to pursue a separate adversary proceeding or contested matter.

Bankruptcy is to a great extent *in rem* in nature. *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 969 (11th Cir. 2012) (*quoting Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 369 (2006)).   Section 1334(e)(1) sets out the extent of the Court's *in rem* jurisdiction in plenary bankruptcy cases other than those commenced by a foreign representative.   This provision is separate from the subject matter jurisdiction granted in sections 1334(a) and (b).   Section 1334(e) permits the bankruptcy court exercising jurisdiction over the *res* to declare rights in the *res* against the world. *Id.* (citations omitted).   When property is within the bankruptcy court's *in rem* jurisdiction, the court may determine all claims that anyone, named in the action or not, has to the property in question. *Id.* (quotation omitted).   Section 1334(e) extends the bankruptcy court's *in rem* jurisdiction to property of the debtor and property of the estate no matter where located, within or outside the United States. *Collett v. Chatham Cnty. (In re Collett)*, 297 B.R. 321, 325 (Bankr. S.D. Ga. 2003); *Noletto v. NationsBanc Mortg. Corp. (In re Noletto)*, 244 B.R. 845, 854 (Bankr. S.D. Ala. 2000).

In contrast, relief under both section 1521(a)(5) and section 1521(b) is limited to assets of the debtor located in the United States.   The reason for this limitation is obvious. A chapter 15 case is an ancillary case whose entire purpose is to assist the efforts of the foreign representative in regard to the foreign proceeding.   To the extent a foreign representative comes to the United States to seek assistance in gathering assets and making distributions, this Court's powers are limited to assets within the territorial jurisdiction of the United States.   If the foreign representative wishes to realize on assets in another country, for example Canada, the foreign representative should seek recognition there.   If assets are located in a country other than where the foreign proceeding is pending, and the Model Law has not been enacted in that country, then the foreign representative is

left to more ancient and likely less effective channels for redress.

There is one instance where a foreign representative may seek the assistance of this Court to obtain a debtor's assets not within the territorial jurisdiction of the United States. After recognition of a foreign main proceeding, and only if the debtor has assets in the United States, the foreign representative may file a plenary bankruptcy case for the debtor under another chapter of title 11. 11 U.S.C. § 1528.  While the extra-territorial *in rem* jurisdiction of the Court otherwise available under section 1334(e) is curtailed in this instance, the Court's jurisdiction does extend to assets outside the United States "to the extent that such other assets are not subject to the jurisdiction and control of a foreign proceeding that has been recognized under this chapter." 28 U.S.C. § 1334(e).  In this limited circumstance, where the Court has recognized a foreign main proceeding, the foreign representative has filed a plenary bankruptcy case for the debtor here, and the foreign representative does not have the benefit of another foreign proceeding for the debtor recognized by this Court having jurisdiction over the asset, then this Court may exercise its extra-territorial *in rem* jurisdiction under section 1334(e).  This is consistent with the ancillary nature of the chapter 15 process, as the reach of this Court outside the United States is limited to the unlikely circumstance that no other recognized proceeding can assist with the asset.

Importantly, none of this has anything to do with subject matter jurisdiction.  This Court's power over assets related to a title 11 case involves the exercise of its *in rem* jurisdiction over such assets.  Whether there is subject matter jurisdiction is an entirely separate question from whether there is *in rem* or personal jurisdiction.

In order to enter a binding order this Court, like all others in the United States, must have two things.  First, the Court must have jurisdiction over the subject matter of

the dispute.  In federal courts, subject matter jurisdiction is a matter of statute.  In bankruptcy matters, the sole source of subject matter jurisdiction is found in sections 1334(a) and (b).  Second, the Court must have either personal jurisdiction over the parties, assuming the plaintiff seeks to bind the parties personally, or *in rem* jurisdiction over property that is the subject of the action, or both.[17]   An *in rem* or *quasi-in-rem* action is akin to *in personam* jurisdiction. 13F Charles Alan Wright et al., *Federal Practice and Procedure* § 3631 (3d ed.).  "Actions *in rem* or *quasi-in-rem*, like actions *in personam*, must meet subject matter jurisdiction requirements." *Id.*; *see also Porsche Cars N. Am., Inc. v. Porsche.net,* 302 F.3d 248, 256 (4th Cir. 2002) (subject-matter jurisdiction is different from *in rem* jurisdiction, which "concerns a court's authority over the res") *and Mattel, Inc. v. Barbie-Club.com,* 310 F.3d 293, 298 (2d Cir. 2002) (discussing confusion over the use of the terms "subject matter jurisdiction" and "*in rem* jurisdiction").

Section 1521(a)(5), like similar provisions in section 1520 and elsewhere in section 1521, effects a limitation on the Court's *in rem* jurisdiction over assets of the debtor in chapter 15.  The Court has subject matter jurisdiction over Count I (and indeed the entire complaint) under section 1334(b).  Section 1521(b)(5) provides no limitation on this subject matter jurisdiction.

### COUNT I DOES NOT IMPLICATE THE COURT'S *IN REM* JURISDICTION

The Defendants appear to argue that liquidating the plaintiff's claim presented in Count I is "administration or realization" of that claim within the meaning of section 1521(a)(5), and that because such claim is, in their view, located outside the United States

---

[17] In some instances the Court requires both personal and *in rem* jurisdiction to grant the requested relief.  For example, when the Court is asked to approve a sale of assets under section 363, and grant additional relief binding on the purchaser and parties in interest, the Court must have *in rem* jurisdiction over the asset, as part of the bankruptcy estate, and personal jurisdiction over the parties.

the Court may not authorize the plaintiff to proceed with Count I.  This argument presents a basic misunderstanding of section 1521 in the context of chapter 15 as a whole and in light of section 1509 in particular.  Any limitation in section 1521 on the Court's *in rem* jurisdiction over property of the plaintiff has no impact on the prosecution of Count I or any other component of the complaint here.

Section 1509 applies whether or not a case under any provision of title 11 is pending. 11 U.S.C. § 103(k)(2).  Even when no petition under chapter 15 has been filed, section 1509 is effective.

Section 1509 is entitled "Right of direct access."  It presents several related provisions addressing the ability of a foreign representative to pursue actions before federal and state courts in this country.  If the bankruptcy court grants recognition under section 1517, the foreign representative has the capacity to sue and be sued in a court in the United States[18]; the foreign representative may apply directly to a court in the United States for appropriate relief in that court; and a court in the United States shall grant comity or cooperation to the foreign representative. 11 U.S.C. § 1509(b).  If the court denies recognition under chapter 15, the court may issue any appropriate order necessary to prevent the foreign representative from obtaining comity or cooperation from courts in the United States. 11 U.S.C. § 1509(d).

---

[18] Section 1509(b)(1) addresses the capacity of the foreign representative to sue and be sued in any court in the United States.  This provision is intended to relieve a foreign representative of the sometimes onerous requirements of diplomatic process, such as the need to seek consular assistance, in order to exhibit capacity to sue.  *See* Guide to Enactment ¶ 93; House Report at 110.  Section 1509(b)(1) does not limit the right of a foreign representative to sue in a state or federal court in the United States to collect or recover a claim that is property of the debtor, a matter specifically addressed in section 1509(f) (discussed below).  Nor does section 1509 in any way limit the jurisdiction of any state or federal court to hear such a claim.

Section 1509(f) provides as follows:

> Notwithstanding any other provision of this section, the failure of a foreign representative to commence a case or to obtain recognition under this chapter does not affect any right the foreign representative may have to sue in a court in the United States or to collect or recover a claim which is the property of the debtor.

In this provision there is no distinction between federal or state courts. The foreign representative is of course subject to applicable nonbankruptcy law, 11 U.S.C. § 1509(e). The chosen venue must have both subject matter jurisdiction and personal and/or *in rem* jurisdiction. But the foreign representative retains the right to sue or to collect on a claim that is property of the debtor whether or not a petition for recognition was filed under chapter 15, and whether or not a petition, if filed, was granted. Indeed, section 1509 applies even if there is no pending title 11 case. 11 U.S.C. § 103(k)(2). In this case the foreign representative could have pursued the claim presented in Count I in a United States state or federal court of competent jurisdiction even if this Court had denied his petition for recognition and dismissed the chapter 15 case.[19]

In light of the provisions of section 1509(f), the Defendants' interpretation of section 1521(a)(5) would lead to an absurd result. Section 1509(f) provides that a foreign representative may pursue litigation in a court in the United States to "recover a claim which is the property of the debtor." 11 U.S.C. 1509(f). The term "debtor" means a debtor that is the "subject of a foreign proceeding." 11 U.S.C. § 1502(1). If the Defendants are correct in their argument that all claims held by a foreign debtor are located in the debtor's place of incorporation, and assuming that debtors in foreign proceedings are formed outside the United States as seems likely in the chapter 15 context, then no claim of a foreign

---

[19] Of course, the action could not have been filed in a federal court under bankruptcy jurisdiction absent the pending chapter 15 case, the source for "related to" jurisdiction under section 1334(b). For federal jurisdiction, the plaintiff would have had to look to 28 U.S.C. § 1332.

debtor could be pursued in the United States in light of section 1521(b)(5).    Section 1521(b)(5) applies only after recognition of a foreign proceeding under chapter 15.    That means that if a foreign debtor has a claim that could be pursued in a United States court (state or federal), that claim may be pursued under section 1509(f), without limitation, prior to recognition of the foreign proceeding under chapter 15.    But if the foreign representative seeks and obtains recognition under chapter 15, that claim cannot be pursued in the United States.    The recognition of the foreign proceeding would <u>constrict</u> the ability of the foreign representative to pursue claims in the United States in furtherance of his or her duties in the foreign proceeding.    This is contrary to the stated purpose of chapter 15.

The Defendants' position is even less palatable when one considers that, under the Defendants' argument, section 1521(a)(5) must also be read as a limitation on subject matter jurisdiction in state courts.    There is nothing in section 1521(a)(5) referring to the bankruptcy court or any other federal court.    The Defendants' argument would apply equally to a suit filed in a state court as a result of the Supremacy Clause.    This leads to the following quixotic example.    Assume a foreign representative duly appointed in Canada for a Canadian corporation filed suit in a Florida state court against a person subject to suit in Florida to recover on an account payable to the foreign debtor.    There is no question that the foreign representative would be able to pursue such claim and section 1509(f) ensures this is the case whether or not a chapter 15 petition is filed and whether or not recognition is granted.    But, if the Canadian foreign representative does file a chapter 15 petition and the United States court recognizes the Canadian proceeding, then the Florida state court suit must be dismissed.    Under the Defendants' argument the claim, owned by a Canadian company, is an intangible asset located in Canada that cannot be pursued in the United States in light of section 1521(a)(5).

The Defendants' confusion stems from their assumption that the "administration or realization" of assets that may be authorized under section 1521(a)(5) includes the litigation of claims owned by the debtor. Section 1521 has nothing to do with the liquidation of claims through litigation; it is not about litigation or obtaining a judgment. Section 1521, to the extent it presents a limitation on this Court's *in rem* jurisdiction, curtails the Court's ability to deal with the tangible and intangible assets themselves. For example, this Court could not approve a sale of an asset owned by a foreign debtor and located outside the territorial jurisdiction of the United States under section 363. *See In re Fairfield Sentry Ltd.*, 484 B.R. 615 (Bankr. S.D.N.Y. 2013).

To rule on the claim presented in Count I, a claim for breach of fiduciary duty against the former directors of a corporation, the Court requires subject matter jurisdiction, which is found in section 1334(b), and personal jurisdiction over the Defendants. *See Collett v. Chatham Cnty. (In re Collett)*, 297 B.R. 321, 325 (Bankr. S.D. Ga. 2003) (analyzing when a claim requires exercise of *in rem* jurisdiction); *see also Seitz v. Freeman (In re CitX Corp.)*, 302 B.R. 144, 152-56 (Bankr. E.D. Pa. 2003) (analyzing the distinction between liquidation of a claim and later execution on assets of an estate). The Court need not exercise its *in rem* jurisdiction here. The limitation on the Court's *in rem* jurisdiction contained in section 1521(a)(5) does not apply to this adversary proceeding.

**THE CLAIM IN COUNT I IS LOCATED IN THE UNITED STATES**

The Court has ruled that the location of the intangible asset represented by the claim in Count I has no bearing on the subject matter jurisdiction of the Court to hear and rule on the claim. Even if it was necessary for the Court to determine where the claim presented in Count I is located, the Court would conclude that the claim is located in the

United States to the extent a court in the United States has personal jurisdiction over the parties to the action.

In arguing that the claim presented in Count I is located in The Bahamas, the Defendants look primarily to case law developed in the context of interstate escheatment disputes and case law analyzing the location of intangible assets for purposes of *in rem* actions under 28 U.S.C. § 1655. The legal analyses in these opinions is not useful in the present case.

For example, the Defendants cite *Delaware v. New York*, 507 U.S. 490 (1993), in which the Supreme Court considered its own rules regarding interstate disputes over competing escheat claims to abandoned intangible personal property. The goal of the court's analysis was singular—a determination as to what <u>one</u> state may escheat the subject intangible property. The court needed to determine that the intangible property was lodged in only a single state because if two or more states attempt to escheat the same intangible property, such attempts run afoul of the Full Faith and Credit Clause. *Texas v. New Jersey*, 379 U.S. 674, 678-79 (1965); *Standard Oil Co. v. New Jersey*, 341 U.S. 428, 442-43 (1951). The Supreme Court began its analysis by determining "the precise debtor-creditor relationship as defined by the law that creates the property at issue." *Delaware*, 507 U.S. at 499.[20] The court first applies its primary rule: "because the property interest in any debt belongs to the creditor rather than the debtor, the primary rule gives the first opportunity to escheat to the State of 'the creditor's last known address as shown by the debtor's books and records.'" *Id.* at 499-500 (quotation omitted). In our case, this would

---

[20] In the context of the present decision, it is easy to become confused by the terms "debtor" and "creditor." In our case, the plaintiff, which is a debtor in a foreign proceeding under chapter 15, is actually the creditor for this purpose, as the plaintiff is the claimant. The Defendants are the debtors.

entail ascertaining the Defendants' understanding of the plaintiff's location, and such location would be the location of the claim presented in Count I.[21]   If it is not possible to assign a location to the claim in this manner, because for example no payee address is recorded by the party owing the debt, the Supreme Court applies the secondary rule.  The secondary rule provides that the state of incorporation of the party owing the debt is entitled to escheat the unclaimed intangible property. *Id.* at 500.  In this case, the party owing the debt would be the Defendants and, being individuals, the Court would consider their domicile rather than state of incorporation.   Here, this would mean the claim is located perhaps in Florida and perhaps in Trinidad and Tobago.

In the escheatment cases, the Supreme Court's application of its primary and secondary rules was intended to determine a single state that would be entitled to escheat unclaimed intangible assets.  The Supreme Court did not state that the claims at issue had only a single location for all purposes.  Indeed, in formulating both the primary and the secondary method of answering the question, the Supreme Court acknowledged that the claims at issue could have more than one location.[22]  The court's task was to come up with a reliable test for determining what one state would be entitled to the asset represented by the claim.  The constitutional concerns at issue in the escheatment cases are not applicable here.  This is not a case where the cause of action is unclaimed and courts must use the escheatment rules to determine the owner of the intangible personal property.  Instead, the

---

[21] Citing *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665 (S.D.N.Y. 2011), addressed in more detail below, the Defendants substitute the phrase "place of incorporation" for the phrase used by the Supreme Court in its primary rule, "last known address."  The place of incorporation of an entity may be different from the last known address of such entity reflected in the books of another.  In any case, the Supreme Court uses the phrase "state of incorporation" only in its secondary rule, discussed below.  *Delaware,* 507 U.S. at 500.

[22] The last known address of the payee obviously need not be the same as the state of incorporation of the payor.

question is which forum can and should determine through judgment a claim for breach of fiduciary duty.   Claims such as this are often amenable to litigation in multiple jurisdictions.  There is no need to ascertain a single forum to oversee litigation of the claim. The rules applied in the Supreme Court's escheatment cases have no place here.

Nor does *GP Credit Co. v. Orlando Residence, Ltd.,* 349 F.3d 976 (7th Cir. 2003), also cited by the Defendants, support their position.  In *GP Credit Co.*, the Seventh Circuit examined 28 U.S.C. § 1655, which "confers *in rem* jurisdiction on the federal courts by directing the district court, in a suit 'to enforce any lien upon or claim to, or to remove any incumbrance or lien or cloud upon title to, real or personal property within the district,' to order a defendant who cannot be served within the state and will not appear voluntarily to appear and plead." *GP Credit Co.,* 349 F.3d at 978.  The question before the court was "whether personal property that consists of an interest in a claim that is being prosecuted in a lawsuit shall be deemed to be 'within the district' in which the owner of the interest resides." *Id.*  The plaintiff filed the action under 28 U.S.C. § 1655 to clear title to proceeds from a lawsuit. *Id.* at 979.  First, the court noted that an action under section 1655 is an *in rem* proceeding.  The court went on to rule that section 1655 did not vitiate subject matter jurisdiction; rather, both subject matter jurisdiction and *in rem* jurisdiction were required to proceed. *Id.*  Subject matter jurisdiction in the case was predicated on diversity of citizenship. *Id.*  Thus, the issue was whether the court below had jurisdiction over the *res*. Given the nature of suits under section 1655, the court had to assign a location to the chose in action so it would be clear which court had the power to determine the *in rem* action. Such is not the case here.  As explained above, Count I before this Court is an *in personam* action in which the Court is asked to determine the relative rights and liabilities of two

parties.  The Court is not asked to rule as to claims on a *res* as against the world.  Unlike in an *in rem* action under section 1655, in this case it is not necessary to assign a single location to the claim expressed in Count I.

For purposes of prosecution to judgment, the claim presented in Count I may have more than one location.[23]  Assuming the Court has personal jurisdiction over the parties to Count I,[24] and having already ruled that the Court has jurisdiction over the subject matter of the dispute, one of those locations is here in the United States.  The plaintiff and the Defendants are known to the Court.  If they are within the jurisdiction of the Court, the Court has the power to determine the debt. *Standard Oil Co.*, 341 U.S. at 439.  "Since choses in action have no spatial or tangible existence, control over them can 'only arise from control or power over the persons whose relationships are the source of the rights and obligations.'" *Id.* (*quoting Estin v. Estin*, 334 U.S. 541, 548 (1948)).  The location of an intangible asset "is fictional but control over parties whose judicially coerced action can make effective rights created by the chose in action enables the court with such control to dispose of the rights of the parties to the intangible.  Since such power exists through the state's jurisdiction of the parties whose dealings have created the chose in action, we need not rely on the concept that the [intangible asset] is where the obligor is found." *Id.* at 439-

---

[23] It is a long accepted precept of quantum dynamics that objects, when measured, present differing results depending on the mode of measurement.  An object subject to quantum mechanics may be ascertained as a particle at one moment and as a wave at another.  *Niehls Bohr Collected Works: Foundations of Quantum Physics II (1933–1958)* (Jorgen Kalckar, ed., Elsevier 1996).  As in the world of physics, choses in action do not necessarily have a single nature.

[24] Mr. Duprey has not challenged the exercise of personal jurisdiction over him; thus, the Court may determine Count I as against him.  As noted above, Mr. Ramlogan has challenged this Court's exercise of personal jurisdiction over him and, as such, it is possible that this Court may not determine Count I as against Mr. Ramlogan.  But that is not because Count I is an intangible asset whose fictional situs is located outside the territorial jurisdiction of the United States or because this Court lacks subject matter jurisdiction over Count I.  Rather, the Court could lack personal jurisdiction over Mr. Ramlogan and thus may not be able to enter judgment binding on him.  This separate issue has yet to be determined.

40.   Thus, if a court has both subject matter and personal jurisdiction, then the claim subject to litigation is present in that court.   Because the Court has subject matter jurisdiction over the dispute, so long as the Court has personal jurisdiction over the parties then the claim presented in Count I is located in the United States.

### IN RE CONDOR INSURANCE LTD. AND IN RE FAIRFIELD SENTRY LTD.

There are two reported decisions, discussed by the parties in their briefs, addressing some of the issues presented here.   It is useful for the Court to review these decisions in light of the present ruling.

In *Fogerty v. Petroquest Resources, Inc. (In re Condor Ins. Ltd.)*, 601 F.3d 319 (5th Cir. 2010), the foreign representative of the debtor, Condor Insurance Ltd., with a winding up petition pending in the Federation of St. Kitts and Nevis, filed a chapter 15 in Mississippi.   *In re Condor Ins. Ltd.*, 601 F.3d at 320.   After recognition of the action in Nevis as a foreign main proceeding, the foreign representatives filed an adversary proceeding in the bankruptcy court against an affiliate of the debtor alleging fraudulent conveyance claims under Nevis law. *Id*. at 320-21.   The defendant moved to dismiss, pointing to section 1521(a)(7) which explicitly prohibits relief under various avoidance provisions of title 11, and arguing that the foreign representatives could not pursue similar claims under foreign law. *Id*. at 321.   First noting that the bankruptcy court had subject matter jurisdiction over the chapter 15 case under 11 U.S.C. § 1334, the Fifth Circuit stated the issue before it as follows:   "Our question is whether the exceptions listed in section 1521(a)(7) to the relief available in the ancillary proceeding exclude not only avoidance actions under U.S. law but also exclude reliance upon domestic law of the foreign main proceeding." *Id*.   After a thorough analysis of section 1521(a)(7), its legislative history, and the Model Law, the court determined that there was no prohibition on the foreign

38

representatives pursuing Nevis fraudulent conveyance claims in an adversary proceeding before the bankruptcy court. *Id*. at 321-29.

*Condor* overturned a lower court ruling that it lacked jurisdiction over the action in light of section 1521(a)(7).  In focusing on the statutory construction of section 1521(a)(7) the circuit court decision says little directly about subject matter jurisdiction over adversary proceedings brought in chapter 15 cases to pursue claims of the foreign debtor.  On the other hand, after considering the question of subject matter jurisdiction over the chapter 15 case, and after analyzing section 1521 in detail, the circuit court never questioned that there was subject matter jurisdiction over the adversary proceeding.  In fact, the court specifically sanctioned the pursuit of the claim in a United States court noting that not all defendants may be subject to the jurisdictional reach of the Nevis court. *Id*. at 327.  Under the Defendants' view the Nevis fraudulent conveyance claim in *Condor* would exceed the court's subject matter jurisdiction.  The debtor, Condor Insurance Ltd., was formed in Nevis.  The Defendants would argue that any claim held by Condor was an intangible asset located in Nevis, outside the territorial jurisdiction of the United States, and thus could not be pursued in light of section 1521(a)(5).  The Fifth Circuit did not agree.[25]

---

[25] It has been suggested that *Condor* stands for the proposition that an avoidance action seeking to obtain property transferred to the United States is a claim within the territorial jurisdiction of the United States because the goal of the action is to retrieve such property.  *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 681 (S.D.N.Y. 2011) ("*In re Condor* does not address the scenario here, where *no assets* sought are located within the territorial jurisdiction of the United States.") (emphasis in original).   This view does not hold water for two reasons.  First, if the question is whether a claim itself is located within the territorial jurisdiction of the United States, the goal of such claim, such as an order directing return of property, has nothing to do with the location of the claim.  The claim and the remedy are two different things.  Second, to the extent the plaintiff in *Condor* sought to recover specific funds or assets held in the United States (this is unclear), then the action was *quasi in rem*, implicating the court's *in rem* jurisdiction, and section 1521(a)(5) relief would be necessary to authorize the action.  Of course, if there were such identified assets sought in the United States, the requirements of section 1521(a)(5) would be satisfied and the court could exercise its *in rem*

The analysis presented in the bankruptcy court and district court decisions in *Fairfield Sentry* deserves greater scrutiny because these decisions more directly address the issue presented here. In *Fairfield Sentry*, the bankruptcy court had before it more than 200 adversary proceedings filed in connection with several related chapter 15 cases. *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 452 B.R. 64, 68 (Bankr. S.D.N.Y. 2011) [*Fairfield I*]. The plaintiffs were three investment funds organized under the laws of the British Virgin Islands. The funds had sold shares to foreign investors and then invested the proceeds with a fund managed by Bernard Madoff. When Mr. Madoff's scandal came to light, the funds lost all of their investments. The funds became subject to liquidation proceedings in the British Virgin Islands. Their foreign representatives commenced chapter 15 cases in New York and obtained recognition. The foreign representatives had filed numerous civil lawsuits seeking to recover share redemption payments made by the funds to their investors at inflated share prices. A number of actions were filed in a New York state court prior to chapter 15 recognition. A number of actions were filed in the bankruptcy court after recognition. The foreign representatives removed the state court cases to the bankruptcy court. The foreign representatives later added claims under British Virgin Islands law for unfair preferences and undervalue transactions. Among other things, the bankruptcy court considered motions to remand numerous proceedings to the New York state court from which they were removed and motions to abstain. *Id.*

The bankruptcy court first determined that the matters before it were core matters because they constituted "other matters under chapter 15 of the Code" under 18 U.S.C. § 157(b)(2)(P) and because the claims at issue were analogous to traditionally core United

jurisdiction. In any case, the court's subject matter jurisdiction must be found in section 1334(b).

States avoidance actions or were inexorably tied to such claims. *Id*. at 74-79. Looking to the *Condor* decision, discussed above, the bankruptcy court determined that section 1521 did not limit the foreign representatives' ability to pursue the adversary proceedings. *Id*. at 79-80. In the alternative, the bankruptcy court ruled that there was related to jurisdiction over the actions. *Id*. at 82-83. Responding to arguments similar to those raised here, the bankruptcy court cited *Parmalat*, discussed above, and pointed to the effect of the adversary proceedings on the estate being administered in Nevis. *Id*. The bankruptcy court ruled that neither permissive abstention nor equitable remand were appropriate. *Id*. at 83-85.[26] The bankruptcy court ruled that mandatory abstention was not available because the matters before it were core and, even if they were not core, they did not satisfy the requirements of section 1334(c)(2). *Id*. at 85-86.

*Fairfield I* was appealed to the district court. *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665 (S.D.N.Y. 2011) [*Fairfield II*].[27] The *Fairfield II* decision was discussed at length by the parties here. In the end, it proves completely unhelpful. The *Fairfield II* decision exhibits a number of basic misunderstandings of federal jurisdiction over bankruptcy matters, the relationship between subject matter jurisdiction and the power of a bankruptcy court to enter final orders and judgments consistent with Article III, and the difference between subject matter jurisdiction and *in rem* jurisdiction, among other things. To the uninitiated, *Fairfield II* appears to present a logical analysis of the issues. Viewed with a full understanding of federal bankruptcy jurisdiction, it completely misses the mark.

---

[26] After first determining that section 1334(c)(1) does not apply in chapter 15 matters, an issue discussed more fully below, the bankruptcy court nevertheless analyzed the traditional factors for permissive abstention and determined that it was not warranted. *Id*. at 83-85.

[27] The district court granted leave to appeal from the bankruptcy court's interlocutory ruling. 458 B.R. at 673.

41

The court in *Fairfield II* repeatedly equated the determination of whether a matter is core with the question of whether there is subject matter jurisdiction. Subject matter jurisdiction is a separate consideration from whether a particular matter is core or non-core. *See Stern v. Marshall*, 131 S. Ct. 2594, 2606-07 (2011) (ruling that section 157(b) is not jurisdictional); *Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553, 567 (9th Cir. 2012) ("*Stern* further made clear that § 157 'does not implicate questions of subject matter jurisdiction.'"). The Court must first determine whether there is subject matter jurisdiction at all. As discussed in detail above, if a matter arises under title 11, arises in a case under title 11, or is related to a case under title 11, there is subject matter jurisdiction. 28 U.S.C. § 1334(b). Whether a matter is core or non-core affects only which court may enter a final order or judgment and under what conditions. 28 U.S.C. § 157. Saying only that a matter is not core fails to answer the jurisdictional question.[28]

The court in *Fairfield II* confused the court's *in rem* jurisdiction in bankruptcy matters with subject matter jurisdiction. The district court correctly noted that when the

---

[28] The determination by the bankruptcy court in *Fairfield I* that the matters before it were core was important primarily because of the effect of this ruling on the motions for remand and abstention. Core matters are not subject to mandatory abstention under section 1334(c)(2), and are rarely subject to permissive abstention under section 1334(c)(1) or equitable remand because of their central role in a bankruptcy case. In *Fairfield II*, the district court focused a great deal of its analysis on whether the matters before it were core. If the district court was concerned that the bankruptcy court could not enter final orders or judgments in the various adversary proceedings (which to this Court appears obvious), it should have either withdrawn the reference under section 157(d) or ruled that the cases were non-core matters and that the bankruptcy court must file proposed findings of fact and conclusions of law under section 157(c)(1). The district court did not do either of these things. Nor did the district court determine, in the end, whether there was subject matter jurisdiction over the adversary proceedings. The district court declined to rule whether there was related to jurisdiction yet nonetheless remanded the matter to the bankruptcy court for a determination whether mandatory abstention was warranted. Mandatory abstention under section 1334(c)(2) is available only if the court has subject matter jurisdiction and the basis for such jurisdiction is limited to the fact that the matter is related to a title 11 case. Thus, the first step in determining a motion for mandatory abstention under section 1334(c)(2) is to state whether the court has related to jurisdiction. The district court gave no specific reason for declining to determine whether there was related to jurisdiction.

action in question is with regard to property itself, the court must have *in rem* jurisdiction over such property to entertain the action.  *See Fairfield II,* 458 B.R. at 679 n.5 ("when the relief sought in a Chapter 15 case acts directly upon the assets sought, the assets must be within the territorial jurisdiction of the United States"); *id.* at 682 n.8 ("where the issue is *property*, principles of *in rem* jurisdiction command that the court have jurisdiction over the res").  Yet the court failed to recognize that the claims before it, a variety of avoidance claims seeking money judgments, were not the subject of the action.  The plaintiffs were not requesting the court to do something with the claims themselves, such as approve the sale of the claims.  The request for relief was to determine the liability of the defendants and liquidate the claims—to obtain a judgment.  The court in *Fairfield II* pointed to the fact that no specific assets were sought in the United States.  But the actions were *in personam* actions for judgments, not *in rem* or *quasi in rem* actions aimed at recovering specific assets.  To the extent section 1521(a)(5) limited the court's *in rem* jurisdiction, any such limitation was not relevant to the decision.[29]

The court in *Fairfield II* confused the relief requested in the various adversary proceedings—money judgments against those who received allegedly inflated redemption payments—with relief under section 1521(a)(5). *Id.* at 677 ("Section 1521(a)(5) . . . is the sole basis for the relief Plaintiffs' seek included by Plaintiffs in the amended complaints.") (as in original).  The plaintiffs in *Fairfield II* did not seek authority to act under section 1521 because such authority was not necessary.  As discussed more fully above, the plaintiffs had the power to pursue the claim as a result of section 1509(f) and the fact that

---

[29] If the plaintiffs in *Fairfield II* had instead sought to recover specified assets, the location of the assets may have been relevant to the power of the court to authorize the action under section 1521(a)(5).  But this would not have presented a question of subject matter jurisdiction.  It would have presented a question as to the extent of the court's *in rem* jurisdiction to grant the requested relief.

the court had subject matter jurisdiction over the adversary proceedings as related to matters under section 1334(b). The relief they sought did not arise under section 1521 or any other provision of chapter 15.[30]

Strangely, the district court in *Fairfield II* recognized that the litigation could be pursued in the state courts under section 1509(f), even at the time of the court's decision. *Id.* at 684. Yet the district court failed to see that if it was correct in its conclusion that section 1521(a)(5) limited the ability of the foreign representatives to pursue the subject claims in federal court under federal bankruptcy jurisdiction, the same limitation would apply in state court, as the statute makes no distinction on this point. The court's approach was thus internally inconsistent. The reason for this erroneous conclusion is that section 1521(a)(5) has no effect on subject matter jurisdiction over claims; it limits only the *in rem* jurisdiction of the court, and the court's *in rem* jurisdiction was not implicated in *Fairfield II*.

The court in *Fairfield II* suggests that its view is the only view consistent with the ancillary nature of a chapter 15 case. This conclusion is based in part on the court's misunderstanding of the relationship between subject matter and *in rem* jurisdiction in this context. It is true that a United States court's *in rem* jurisdiction in chapter 15 matters is limited, as discussed more fully above, so that a United States court's role in cross-border matters is consistent with the ancillary nature of the chapter 15 case. Yet the exercise of a United States court's subject matter jurisdiction under section 1334(b), to hear proceedings that assist the foreign representative and thus the foreign court, is entirely consistent with

---

[30] It is perplexing that the court's analysis of this issue in *Fairfield II* falls under the heading of "arising in" rather than under "arising under" as it is apparent that a request for authority to act under section 1521, if relevant, would be a proceeding "arising under" the explicit provisions of chapter 15.

the ancillary nature of chapter 15. To the extent this Court has subject matter jurisdiction over a dispute, has personal jurisdiction or *in rem* jurisdiction sufficient to support the action, and the action is not subject to abstention or remand or the limitations of section 1506, this Court should exercise that subject matter jurisdiction to assist the foreign proceeding. This is consistent with the primary goal of chapter 15.

The court's ruling in *Fairfield II* that the adversary proceedings there did not constitute core matters was correct.[31]  Unfortunately, almost none of the analysis in the opinion is consistent with precedent addressing federal bankruptcy jurisdiction. This Court declines to follow *Fairfield II*.

### STANDING OF THE FOREIGN REPRESENTATIVE

The Defendants argue that Mr. Glasgow, as foreign representative of BAICO, lacks standing to bring Count I and so the Court lacks subject matter jurisdiction.[32]  The Defendants argue that Mr. Glasgow does not having standing because he is a foreign representative of the SVG proceeding, a foreign nonmain proceeding focused solely on BAICO's branch offices in SVG. In support, the Defendants cite section 1521(c), which provides:

In granting relief under this section to a representative of a foreign nonmain

---

[31] 18 U.S.C. § 157(b)(2)(P), the section cited by the bankruptcy court in *Fairfield I*, states that "recognition of foreign proceedings and other matters under chapter 15 of title 11" are core matters. In the context of federal bankruptcy jurisdiction, the word "under," as with the phrase "arising under," has traditionally referred to matters specifically authorized by the referenced statute. Thus, section 157(b)(2)(P) should be read to include within the ambit of core chapter 15 matters the recognition procedure and requests for relief covered by the various provisions of chapter 15. Examples include a request for pre-recognition relief under section 1519, a request for a stay of execution under section 1521(a)(2), and a request for coordination with the foreign proceeding under section 1529. The adversary proceedings in *Fairfield Sentry* were not grounded in chapter 15 and so were not "matters under chapter 15" within the meaning of section 157(b)(2)(P). For the same reason, this Court ruled that the claims presented in this adversary proceeding are entirely non-core.
[32] The complaint is presented in the name of BAICO, rather than in the name of Mr. Glasgow as judicial manager for BAICO. The Court sees no material distinction. In this case, BAICO acts solely through Mr. Glasgow.

> proceeding, the court must be satisfied that the relief relates to assets that, under the law of the United States, should be administered in the foreign nonmain proceeding or concerns information required in that proceeding.

11 U.S.C. § 1521(c). The Defendants argue that section 1521(c) only permits Mr. Glasgow to administer assets located in the United States that relate to the SVG proceeding, that Count I is a claim located in The Bahamas, and that Mr. Glasgow therefore cannot litigate Count I. The Defendants also argue that this Court's *Order Granting Relief Under 11 U.S.C. § 1521* did not and could not grant Mr. Glasgow standing to bring Count I. Again, the Defendants rely on their argument that Count I is intangible property located in The Bahamas and that the Court is thereby precluded from adjudicating the claim.

As explained in detail above, section 1521 has nothing to do with prosecution of an *in personam* action for a money judgment and thus does not in any way limit the plaintiff's ability to pursue the claim in Count I. It was not necessary for this Court to authorize the plaintiff, acting through Mr. Glasgow, to file the present action. Mr. Glasgow already had this power under section 1509(f). Nor does section 1521(c), limiting relief in nonmain cases to assets that should be administered in the nonmain proceeding, apply in this case. The relief requested in Count I does not relate to assets—it seeks entry of judgment against the Defendants. Even if the Court ruled that section 1521(c) somehow applies here, the potential augmentation of the estate in the SVG proceeding is sufficient to meet the requirements of that provision.

The Defendants argue that allowing Mr. Glasgow, a foreign representative from a proceeding recognized only as a nonmain proceeding, which is one of many foreign proceedings pending for the plaintiff, to pursue Count I could open up the Defendants to duplicative suits brought by other foreign representatives for the plaintiff. There is no reason to believe this is the case and the Defendants point to nothing that would lead the

Court to conclude that such risk is real.[33]  If another foreign representative for the plaintiff were to attempt to pursue the same claim as that presented in Count I against the Defendants, the Court would then consider whether the present action should be dismissed, consolidated, transferred to the other venue, or the like.   There is no need for such determination now.

There is also no reason to believe that Mr. Glasgow lacks authority from the SVG Court to pursue the present action.  The Defendants pointed to nothing that would cause the Court to doubt he has such authority.[34]

The plaintiff, acting through Mr. Glasgow, has standing to bring the claim presented in Count I.

**PERMISSIVE ABSTENTION**

In the alternative, the Defendants argue that the Court should abstain from adjudicating Count I pursuant to 28 U.S.C. § 1334(c)(1), the permissive abstention provision.  It provides:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.[35]

---

[33] Although not necessary to the present ruling, the Court has previously noted that the various foreign proceedings relating to the plaintiff are coordinated through a foreign proceeding pending in The Bahamas.  In light of this centralized effort, apparent in the reports filed by Mr. Glasgow in this chapter 15 case, the Defendants likely were unable to claim that this adversary proceeding was not part of a coordinated effort in the numerous related foreign proceedings.

[34] Although not necessary to this decision, from the recognition proceeding in this chapter 15 case the Court is familiar with Mr. Glasgow's order of appointment, also referenced above in this opinion. The pursuit of Count I appears well within his authority under that order.  The Defendants are likely well aware of this fact and thus provided no specific grounds to support the allegation that he lacks authority.

[35] While 28 U.S.C. § 1334(c)(1) refers to comity with "state courts" and with respect to "state law," several courts have extended 28 U.S.C. § 1334(c)(1) to foreign proceedings under the doctrine of international comity. *In re CPW Acquisition Corp*., No. 08-14623, 2011 WL 830556 (Bankr. S.D.N.Y. Mar. 3, 2011) (citing cases).

The Court must first determine whether section 1334(c)(1) applies to an adversary proceeding that is related to a chapter 15 case. The plaintiff argues that permissive abstention does not apply because the introductory phrase of section 1334(c)(1), "[e]xcept with respect to a case under chapter 15 of title 11," means that the Court cannot abstain from hearing proceedings arising under chapter 15, arising in a chapter 15 case, or related to a chapter 15 case in light of this provision.

There are two possible readings of the opening phrase in section 1334(c)(1). One may interpret the phrase "[e]xcept with respect to a case under chapter 15 of title 11" to refer only to the chapter 15 case itself, and not to proceedings pursued within that chapter 15 case such as matters arising under chapter 15 or arising in or related to the chapter 15 case. Under this view, the opening phrase of section 1334(c)(1) would not permit the Court to abstain from ruling on a request for recognition of a foreign proceeding and would not permit the Court to abstain thereafter from the entire chapter 15 case by dismissing the case. But the Court could abstain from any proceeding arising under chapter 15, arising in a chapter 15 case, or related to a chapter 15 case if the requirements of section 1334(c)(1) were satisfied.[36] The hallmark of this view is that the word "case" in the opening phrase of section 1334(c)(1) means that abstention under this subsection is prohibited only when the Court is considering abstaining from an entire chapter 15 case. This view suffers from the

---

[36] This is similar to the approach taken in *Abrams v. Gen. Nutrition Cos., Inc.*, No. 06-1820, 2006 WL 2739642 (D.N.J. Sept. 25, 2006). However, in *Abrams* the court appears to state that a matter arising "under" a chapter 15 case would not be subject to abstention under section 1334(c)(1). *Id.* at *7. It is unclear whether the court was using the word "under" in the same manner as it is used elsewhere in section 1334, or whether it was giving a different meaning to the term. The court ignores the fact that the term "under" is used to augment the term "case" rather than the term "proceeding." In any case, the *Abrams* court held that the exception in section 1334(c)(1) did not apply to a matter related to a chapter 15 case; that is, that a matter related to a chapter 15 case could be subject to permissive abstention. *Id.*

48

weakness that it interprets the phrase "[e]xcept with respect to a case under chapter 15 of title 11" in a vacuum, without taking into account its context in section 1334.

The opposing interpretation of the opening phrase of section 1334(c)(1) takes into consideration the remaining text of that subsection.  In general, subsection (c)(1) permits abstention from proceedings arising under title 11 or arising in or related to a case under title 11.  That is, it permits a court to abstain from matters other than the title 11 case itself.  Because subsection (c)(1) is aimed at abstention from proceedings arising in, arising under and related to a title 11 case, the words "[e]xcept with respect to a case under chapter 15 of title 11" must refer to matters arising under, arising in or related to a case under chapter 15, and not the chapter 15 case itself.  Under this view, section 1334(c)(1) could not be used to abstain from any proceeding arising under a provision of chapter 15, arising in a chapter 15 case, or related to a chapter 15 case.[37]  Count I here is related to a chapter 15 case, and so section 1334(c)(1) could not be used to abstain from hearing Count I.  Because this view of section 1334(c)(1) interprets the exclusionary provision in light of the entire text of the subsection, the Court believes this view of section 1334(c)(1) to be correct.  The Court may not abstain from Count I under section 1334(c)(1).

At first glance, the Court's interpretation of section 1334(c)(1) seems to lead to an absurd result.  Under this Court's ruling a matter that arises under chapter 15 or that arises in a chapter 15 case, as opposed to a matter that is merely related to a chapter 15 case, would not be subject to abstention under any circumstances as neither the permissive abstention provision of section 1334(c)(1) nor the mandatory abstention provision of section 1334(c)(2) would apply.  A related to matter, such as Count I here, could be subject to

---

[37] This is consistent with the ruling of the bankruptcy court in *Fairfield I*. 452 B.R. at 83.

abstention only under the mandatory provision set out in section 1334(c)(2).[38]   Yet this outcome is consistent with section 305, the provisions of chapter 15, and the overall goals of chapter 15.

Chapter 15 was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Pub. L. No. 109-8, § 801, 119 Stat. 23, 134-45 (2005).  11 U.S.C. § 305 and 28 U.S.C. § 1334(c)(1) were also amended at that time. *Id.* § 802, 119 Stat. at 145-46.

The explicit purpose of chapter 15 is to provide effective mechanisms for dealing with cases of cross-border insolvency.  Its objectives include cooperation between United States courts and authorities of foreign countries involved in cross-border insolvency cases, and the fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, the debtor, and other interested entities. 11 U.S.C. § 1501(a).

"Central to Chapter 15 is comity." *Ad Hoc Group of Vitro Noteholders v. Vitro S.A.B. de CV (In re Vitro S.A.B. de CV)*, 701 F.3d 1031, 1043 (5th Cir. 2012).  Chapter 15 provides objective criteria to aid courts in the recognition analysis; however, comity remains a primary objective when courts consider requests for post-recognition relief.  *In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009) (citing examples of comity concerns in chapter 15, such as section 1509(b)(3) and section 1507).  After recognition, "chapter 15 specifically contemplates that the court will exercise its discretion consistent with principles of comity." *Id.*

---

[38] Mandatory abstention is not argued here.

Section 305[39] is the sole statutory authority for abstention from a title 11 case. However, section 305 is not applicable in a case under chapter 15.  11 U.S.C. § 103(a).[40] There is no provision in federal law allowing a federal court to abstain from an entire chapter 15 case.  Nor is there any provision in federal law permitting abstention from matters arising under chapter 15 or arising in a chapter 15 case.[41]  To the contrary, chapter 15 and section 1334 ensure that the decision whether to recognize a foreign proceeding, and control over further relief under chapter 15, rests with a single court.[42]  Congress reinforced this by eliminating the possibility of abstention from the entire chapter 15 case and from matters arising under chapter 15 or arising in a chapter 15 case.    The Court's interpretation of section 1334(c)(1) is consistent with the intent of Congress.[43]

---

[39] Section 305 provides, in relevant part:
> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if--
>> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension; or
>> (2)(A) a petition under section 1515 for recognition of a foreign proceeding has been granted; and
>> (B) the purposes of chapter 15 of this title would be best served by such dismissal or suspension.
> (b) A foreign representative may seek dismissal or suspension under subsection (a)(2) of this section.

[40] Section 305 is not included in the list of Bankruptcy Code sections applicable in chapter 15.  Thus, a chapter 15 case itself is not subject to abstention under section 305.  However, a foreign representative in a recognized foreign main proceeding may file a plenary case for the debtor under another chapter of title 11 pursuant to section 1528.  Section 305 does apply in such a plenary bankruptcy case filed by a foreign representative.  Section 305(a)(2) provides an additional basis for abstention from the plenary case when that plenary case no longer serves the purposes of chapter 15.

[41] *See* House Report at 106, 108, 117.

[42] The House Report states that sections 1509(b)(2), (b)(3), and (c) "make it clear that chapter 15 is intended to be the exclusive door to ancillary assistance to foreign proceedings.  The goal is to concentrate control of these questions in one court." House Report at 110.

[43] This is not to say that there is no discretion for the Court to decline to take action within a chapter 15.  For example, section 1506 permits the Court to refuse to grant requested relief when the action would be manifestly contrary to the public policy of the United States.  Section 1522 permits the Court to consider the interests of the creditors and other interested entities, including the debtor, when entertaining relief under sections 1519 and 1521.  And section 1517(d) permits the Court to modify or terminate recognition if there exists a change in circumstances.  Numerous provisions of chapter 15 give the Court flexibility in tailoring its rulings.

Proceedings related to a chapter 15 case, such as the adversary proceeding before the Court here, may still be subject to abstention, but only under the mandatory abstention provision of section 1334(c)(2). Through amendments to section 305 and section 1334(c), and by the provisions of chapter 15, Congress required that if the district courts (and the bankruptcy courts by referral) have related to jurisdiction, and the matter is not subject to mandatory abstention under section 1334(c)(2), then the court must hear the matter. This is consistent with the goal of international cooperation that permeates chapter 15 as it ensures that United States courts will provide appropriate assistance to foreign proceedings when it is within their power.

Because section 1334(c)(1) does not permit this Court to abstain from Count I, the Defendants' request for permissive abstention should be denied.[44]

---

[44] If section 1334(c)(1) could be applied to Count I in this case, the Court would in fact abstain from hearing Count I. Most of the usual factors considered in ruling on a permissive abstention motion are satisfied here. *See E.S. Bankest, LLC v. United Beverage Fla., LLC (In re United Container LLC)*, 284 B.R. 162, 176 (Bankr. S.D. Fla. 2002). If discretionary abstention was exercised, there would be little effect on administration of the chapter 15 case, and likely little effect on the administration of the case pending in the SVG Court, as the plaintiff would seek the same relief elsewhere. Count I presents issues entirely outside of bankruptcy law; there is no need to consider the feasibility of severing such claims from bankruptcy matters as no bankruptcy matters are present. The sole basis for jurisdiction here is 28 U.S.C. § 1334. Count I is remote from the chapter 15 case and also likely remote from the case pending in the SVG Court; Count I probably would be pursued in a forum other than the SVG Court. Count I is a non-core rather than a core matter. There is no good reason for Count I to be pursued in a federal court under bankruptcy jurisdiction, other than convenience of the plaintiff, and it would place a heavy burden on the docket of this Court and on the docket of the district court should the matter go to trial there. The Defendants are non-debtor parties and one of them may be prejudiced by the need to defend here where he does not reside. Each of these factors would support permissive abstention under the usual test. The plaintiff has requested a jury trial in this adversary proceeding, but has yet to perfect that request consistent with the Court's scheduling order. It is not possible to determine whether there will be a jury trial on Count I, and so this factor is neutral. There are no facts alleged that would lead the Court to believe that forum shopping is involved in filing the complaint here. The only factors supporting denial of abstention are considerations of comity with the SVG Court, the fact that the claim presented in Count I is not a difficult or unsettled matter, and the lack of another matter pending in a state or non-United States court to liquidate the claim presented in Count I. Permissive abstention typically involves dismissal in favor of another pending matter, and there is none here. On the other hand, the plaintiff does not even allege that abstention would leave it without a venue. Indeed, it appears that the plaintiff may have more than one potential venue to

**CONCLUSION**

For the foregoing reasons, it is ORDERED AND ADJUDGED that *Lawrence Duprey's and Vishnu Ramlogan's Motion to Dismiss Count I of the Adversary Complaint or, Alternatively, for Abstention* [ECF No. 174] is DENIED.[45]

###

Copies Furnished To:

Kristopher E. Pearson, Esq.

*Kristopher E. Pearson, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and file a certificate of service.*

---

pursue the claim presented in Count I. This also relieves the Court's concern with regard to comity with the SVG Court. Thus, if section 1334(c)(1) applied in this case, the Court would determine to abstain from hearing Count I.

[45] In this *Memorandum Opinion*, the Court denies a motion to dismiss and a motion for abstention. This ruling does not end any component of the litigation on the merits, thereby leaving nothing for the court to do but execute a judgment, and so is not a final order. *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867-68 (1994). Because this *Memorandum Opinion* is not dispositive with regard to any claim presented in this adversary proceeding, it is not necessary for this Court to file proposed findings of fact and conclusions of law under the district court's *Order Granting Motions to Withdraw Reference to Bankruptcy Court* [ECF No. 245]. Likewise, the present ruling is not a "final judgment" subject to the Article III concerns addressed by the Supreme Court in *Stern v. Marshall*, 131 S. Ct. 2594, 2615, 2620 (2011) (specifically limiting the Supreme Court's analysis to "final judgments"). In light of the district court's order withdrawing the reference, it is the district court that will enter final judgment in this adversary proceeding. If the district court's order withdrawing the reference is vacated then, because this adversary proceeding is entirely non-core, absent consent of the parties under 28 U.S.C. § 157(c)(2), this Court will file proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1) and Fed. R. Bankr. P. 9033.