[Tagged]



**ORDERED in the Southern District of Florida on April 26, 2013.**

Erik P. Kimball, Judge
United States Bankruptcy Court
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| In re: | Chapter 15 |
| BRITISH AMERICAN INSURANCE COMPANY LIMITED, | Case No. 09-31881-EPK<br>Case No. 09-35888-EPK<br>(Jointly Administered) |
|     Debtor in a Foreign Proceeding.<br>_____/ | |
| BRITISH AMERICAN INSURANCE COMPANY LIMITED, | |
|     Plaintiff,<br>v. | Adv. Proc. No. 11-03118-EPK |
| ROBERT FULLERTON, BRIAN BRANKER, RAMCHAND RAMNARINE, LAWRENCE DUPREY, VISHNU RAMLOGAN, SHIVA RAMBERRAN, GREEN ISLAND HOLDINGS, LLC, and CHARLES PRATT, | |
|     Defendants.<br>_____/ | |

**ORDER ON MOTION TO DISMISS FOR LACK
OF PERSONAL JURISDICTION [ECF NO. 172]**

THIS MATTER came before the Court upon the *Defendant Vishnu Ramlogan's Motion to Dismiss for Lack of Personal Jurisdiction* [ECF No. 172] (the "Motion") filed by Vishnu Ramlogan ("Mr. Ramlogan"). For the reasons stated more fully below, the Motion should be granted. This Order constitutes the Court's proposed findings of fact and conclusions of law filed under Fed. R. Bankr. P. 9033, consistent with the district court's *Order Granting Motions to Withdraw Reference to Bankruptcy Court* [ECF No. 245].

I.  **Background**

British American Insurance Company Limited ("BAICO") is a corporation organized under the laws of the Bahamas. It has or had branch operations throughout the Caribbean, including Saint Vincent and the Grenadines ("SVG"). BAICO owns a number of subsidiaries, including another chapter 15 debtor before this Court, British American Isle of Venice (BVI) Limited ("Isle of Venice"), a corporation organized under the laws of the British Virgin Islands.

By order entered August 4, 2009 (the "SVG Order of Appointment"), the Eastern Caribbean Supreme Court in the High Court of Justice Saint Vincent and the Grenadines (the "SVG Court") appointed Brian Glasgow as Judicial Manager for BAICO under Section 52 of the Insurance Act, No. 45 of 2003 of the Laws of Saint Vincent and the Grenadines. *In re British Am. Ins. Co.*, 425 B.R. 884, 893 (Bankr. S.D. Fla. 2010). On November 23, 2009, Mr. Glasgow, as duly appointed Judicial Manager for BAICO, filed a petition with this Court pursuant to sections[1] 1515 and 1517, seeking recognition of the proceeding in the SVG Court as a foreign nonmain proceeding. On March 22, 2010, this Court recognized the proceeding in SVG as a foreign nonmain proceeding. *Id.* After recognition by this Court,

---

[1] In this order, the words "section" or "sections" refer to provisions of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

BAICO filed the above-captioned adversary proceeding.

Mr. Ramlogan is a citizen of the Republic of Trinidad and Tobago. He is a former director of BAICO. In its complaint BAICO seeks, among other things, damages from several of its former directors, including Mr. Ramlogan, for alleged breaches of fiduciary duty when such directors caused BAICO to enter into an unsuccessful real estate transaction with defendant Green Island Holdings, LLC ("GIH"). BAICO's core allegation is that its former directors, including Mr. Ramlogan, "drove BAICO into highly speculative and cash-intensive real estate investments in the State of Florida which, not only were against the best interests of BAICO, were actually fatal to [its] financial existence." BAICO states that the former directors' actions rendered BAICO insolvent and left it with unreasonably small capital.

After alleging that Mr. Ramlogan and other director defendants caused BAICO to undertake several inappropriate investments, BAICO focuses on what is referred to as the Green Island transaction. The history of the transaction involves multiple assignments of the rights of both the seller and the purchaser through various entities, a level of complication that the Court need not review here. In the simplest terms, the Green Island transaction involved the acquisition by BAICO, through its wholly-owned subsidiary Isle of Venice, of an interest in approximately 6,000 acres of substantially undeveloped real estate in Florida. BAICO caused Isle of Venice to purchase from GIH a 100% membership interest in Green Island Ventures, LLC ("Ventures"). Ventures was the owner of the real estate, which it acquired on the same day that Isle of Venice acquired ownership of Ventures. After closing of the Green Island transaction, Ventures owned the real estate, Isle of Venice owned Ventures, and BAICO continued to own Isle of Venice. Thus, BAICO became the indirect owner of the real estate. In connection with the Green

Island transaction, it is alleged that BAICO funded nearly $82 million in cash and obligated itself on a $159 million mortgage to a prior owner of the real estate and on a purchase money note exceeding $56 million in favor of GIH.  BAICO alleges that Mr. Ramlogan and other former directors of BAICO breached their fiduciary duties by purposefully causing BAICO to enter into a transaction that they knew would cause great harm to BAICO.

**II.    Standard for Motions to Dismiss for Lack of Personal Jurisdiction**

BAICO must establish a *prima facie* case of personal jurisdiction over a nonresident defendant such as Mr. Ramlogan.  A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict or judgment as a matter of law. *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010) (quotation omitted); *SEC v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997) (quotation omitted).  If a "defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  "[W]here the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff." *PVC Windoors, Inc.*, 598 F.3d at 810 (quotation omitted).  The plaintiff "bears the ultimate burden of establishing that personal jurisdiction is present." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009).

**III.    Analysis**

Because Fed. R. Bankr. P. 7004(f) provides for nationwide service of process, the Court need not consider any state long-arm statute.  Instead, the Court looks solely to the Due Process Clause of the Fifth Amendment to the United States Constitution to determine

4

whether the Court has personal jurisdiction over Mr. Ramlogan in this adversary proceeding.

"The Due Process Clause . . . sets the outer boundaries of a state tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) (citation omitted).  Personal jurisdiction may be either general or specific, but in any case must comport with the requirements of due process.  "A court may assert general jurisdiction over foreign [defendants] to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* at 2851.  "Specific jurisdiction, on the other hand, depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quotation omitted).  "[D]ue process requires [] that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Such minimum contacts exist where the controversy relates to or arises out of a defendant's contacts with the forum, the contacts involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws, and the defendant should reasonably anticipate being haled into court in that forum. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir. 1996).   There are no mechanical or "talismanic jurisdictional formulas" at the Court's disposal. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 485-86 (1985).  The question of personal jurisdiction is fact-specific. *See id.*

**A.    General Personal Jurisdiction**

The Court may exercise general personal jurisdiction over a defendant who has exercised systematic and continuous contact with the forum. *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437 (1952). General personal jurisdiction is typically reserved for parties with a home base of operations in the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (defendant must be "essentially at home" in the forum state). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* at 2853.  Where the forum is not the domicile of an individual defendant, courts examine the defendant's contacts with the forum over a reasonable period of time prior to service of the summons to determine whether the exercise of general personal jurisdiction over the defendant is proper. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984); *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437 (1952); *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999) (reasonable period of time prior to the filing of the complaint).

Mr. Ramlogan does not reside in the United States.  In ruling on the question whether the Court has general personal jurisdiction over Mr. Ramlogan, the Court must consider his contacts with the United States in the years immediately preceding the commencement of this adversary proceeding in December, 2011.

BAICO argues that within the last seven years Mr. Ramlogan: served as director or officer of eight Florida businesses; conducted meetings in person in Florida; directed activities in Florida through correspondence and through his alleged agent, co-defendant Robert Fullerton; and provided financial assistance to his children living in the United States.  BAICO argues that Mr. Ramlogan is essentially at home in the United States.

6

The evidence indicates a less fulsome relationship between Mr. Ramlogan and the United States than BAICO suggests. In the several years prior to service of the summons in this action Mr. Ramlogan visited the United States sporadically for business purposes, visited the United States occasionally to see his children, sometimes sent correspondence to professionals in the United States regarding real property BAICO owns in the United States, and occasionally sent money to his children residing in the United States. Viewed as a whole, the evidence currently before the Court indicates that Mr. Ramlogan's links to the United States are not systematic and continuous such that he is rendered essentially at home in the United States. Mr. Ramlogan's ties to the United States are not sufficient to support the exercise of jurisdiction over claims unrelated to his specific contacts with the United States. The Court may not assert general personal jurisdiction over Mr. Ramlogan.

### B.   Specific Personal Jurisdiction

One way to satisfy the minimum contacts requirement is to show that Mr. Ramlogan committed an intentional tort directly aimed at this forum causing injury within this forum that he should have reasonably anticipated. *Calder v. Jones*, 465 U.S. 783, 790 (1984). In the complaint, BAICO alleges that Mr. Ramlogan and the other board members breached their fiduciary duties to BAICO by causing it to invest in Florida real estate, which led to BAICO suffering a loss. BAICO was formed under the laws of The Bahamas and has its primary business operations outside the United States. Any breach of fiduciary duty by Mr. Ramlogan caused harm to BAICO in its place of formation outside this forum. BAICO's breach of fiduciary duty claim cannot be said to have been reasonably expected to cause harm to BAICO within this forum. Consequently, the breach of fiduciary duty claim cannot support exercise of personal jurisdiction over Mr. Ramlogan under the *Calder* standard.

Another way to satisfy the minimum contacts requirement is to show that the

controversy before the Court is related to or arises out of Mr. Ramlogan's purposeful contacts with the United States. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). To meet this standard, BAICO must show that Mr. Ramlogan's contacts with this forum are related to or give rise to BAICO's cause of action against him, that by such contacts he purposefully availed himself of the privilege of conducting activities in the United States, and that his contacts with the United States are such that he should reasonably have anticipated that he could be haled into court here. *See Fraser v. Smith,* 594 F.3d 842, 850 (11th Cir. 2010).

BAICO argues that Mr. Ramlogan was a director of BAICO from 2006 through 2009 and was appointed as Executive Chairman of BAICO in late 2008, that in his capacity as director of BAICO Mr. Ramlogan was involved in projects in Florida including the Green Island investment, and that Mr. Ramlogan directed the management of BAICO's Florida investments by negotiating transactions with parties in Florida and appointing representatives to act on his behalf in Florida. BAICO draws the Court's attention to voluminous correspondence that BAICO claims indicates Mr. Ramlogan's extensive involvement in the Green Island development. BAICO points to: Mr. Ramlogan's attendance in person at a BAICO board meeting in Florida in October 2006; Mr. Ramlogan's attendance in person at a meeting in Florida in 2008 to manage BAICO's business affairs; Mr. Ramlogan's oversight of the development of the Green Island property; Mr. Ramlogan's alleged appointment of an agent in Florida to act on his behalf; Mr. Ramlogan's oversight of the renegotiation, through Florida counsel, of a loan relating to the Green Island transaction; and Mr. Ramlogan's interactions, from abroad, with Florida lenders and their legal counsel in Florida (apparently relating to Green Island).

For this Court to exercise specific personal jurisdiction over Mr. Ramlogan, the

cause of action against him must relate to or arise from his contacts with the United States. The gravamen of the complaint is that Mr. Ramlogan and other former directors of BAICO "breached the[ir] fiduciary duties by purposefully <u>entering into a transaction</u> which they knew would cause great harm to BAICO." [Compl. ¶ 72; emphasis added]  The specific action complained of by BAICO – the alleged breach of fiduciary duty that is at the center of the complaint – was the act of causing BAICO to enter into the Green Island transaction and to indirectly acquire the Green Island property.  Thus, to determine whether the Court has specific personal jurisdiction over Mr. Ramlogan, the Court must analyze Mr. Ramlogan's contacts with the United States leading up to the Green Island transaction. Obviously, Mr. Ramlogan's contacts with the United States after BAICO had acquired the Green Island property could not have led to BAICO acquiring the Green Island property and thus could not give rise to a breach of fiduciary duty claim as stated in the complaint. What Mr. Ramlogan did after BAICO closed the Green Island transaction cannot form the basis for specific personal jurisdiction here.

The evidence before the Court shows that Mr. Ramlogan had no contact with the United States relating to the Green Island investment prior to the closing of that transaction.  The voluminous correspondence filed by BAICO shows that Mr. Ramlogan's activities relating to the Green Island investment took place only after BAICO had become the indirect owner of the Green Island project.  It is true that after the property was controlled by BAICO Mr. Ramlogan oversaw the project, including renegotiation of financing and directing various parties in the development of the project.  But nothing in the record indicates that Mr. Ramlogan had anything to do with BAICO "entering into" the Green Island transaction, the act BAICO points to as the breach of fiduciary duty.

A close review of the correspondence attached to BAICO's response supports this

conclusion. The first time anyone associated with BAICO learned of the Green Island investment was April 2007. [Compl. ¶ 38] The Green Island transaction closed about nine months later on January 7, 2008. [Compl. ¶¶ 56-57] Yet the earliest of Mr. Ramlogan's correspondence attached to BAICO's response is dated after the January 7, 2008 closing date of the Green Island transaction. Much of the correspondence was not initiated by Mr. Ramlogan; he was only a recipient or copied with other parties. The correspondence to the United States initiated by Mr. Ramlogan himself was meager by comparison. Yet even this insignificant stream of correspondence is irrelevant for the present purpose because it addressed issues arising only after the acquisition of the Green Island property – after the breach of fiduciary duty alleged in the complaint.

BAICO points to two of Mr. Ramlogan's visits to the United States, arguing that these show his involvement in the Green Island transaction. The first was a BAICO board meeting in Ft. Lauderdale, Florida in October 2006. There is no evidence that Mr. Ramlogan, or anyone at BAICO, knew of the Green Island transaction until six months after that meeting. The 2006 BAICO board meeting could not have had anything to do with Green Island. Not surprisingly, in his affidavit in support of his reply Mr. Ramlogan declares that the Green Island investment was not discussed at the October 2006 meeting. BAICO points to a second meeting in the United States, in November 2008, some ten months after the closing of the Green Island transaction. By the time of this second meeting the breach of fiduciary duty alleged in the complaint had long ago occurred.

Mr. Ramlogan states in his affidavit that he had no role in BAICO's decision to enter into the Green Island transaction. BAICO offered nothing to contradict this. At a minimum, no evidence in the record supports the contention that Mr. Ramlogan's contacts with the United States relate to or gave rise to the breach of fiduciary duty claim stated in

the complaint.

Because BAICO has not met its burden of establishing Mr. Ramlogan's minimum contacts with the United States, the Court need not address whether the assertion of personal jurisdiction over Mr. Ramlogan would comport with concepts of fair play and substantial justice consistent with due process.

Accordingly, it is PROPOSED that *Defendant Vishnu Ramlogan's Motion to Dismiss for Lack of Personal Jurisdiction* [ECF No. 172] be GRANTED.

The clerk is directed to submit to the district court, pursuant to 28 U.S.C. § 157(c)(1) and Fed. R. Bankr. P. 9033, the following:

a. this Order;

b. the Motion [ECF No. 172];

c. BAICO's Response [ECF No. 269];

d. BAICO's *Request for Judicial Notice* [ECF No. 270];

e. this Court's *Order Setting Deadline for Opportunity to Be Heard on the Propriety of Taking Judicial Notice* [ECF No. 276];

f. Mr. Ramlogan's Reply [ECF No. 280];

g. this Court's *Order Granting Request for Judicial Notice* [ECF No. 288]; and

h. any objections filed pursuant to Fed. R. Bankr. P. 9033(b).

The parties shall comply with Fed. R. Bankr. P. 9033.

# # #

Copies furnished to:
Kristopher E Pearson, Esq.

*Kristopher E Pearson, Esq. is directed to serve a copy of this order on all appropriate parties and to file a certificate of service.*